CARVER et al. v. MAXWELL.

'(Nashville. December Term, 1902.)'

1. **HUSBAND AND WIFE.** Presumption that widow claims real estate of husband by inheritance, when.

Under the statutes governing the descent of real property the widow inherits the real estate of the husband in case he dies intestate and without heirs, and where it appears that a widow, as such, claimed the real estate of which her husband died seized, and conveyed it by deed purporting to convey an estate in fee, it will be presumed, in the absence of anything to the contrary, that she claimed to have inherited said real estate from her husband. (*Post, pp.* 78-79.)

Code cited: Sec. 4165 (S.); 3272 (M. & V.); 2422 (T. & S. and 1858.)

2. **EJECTMENT.** Common source of title, case in judgment.

Complainants claiming to be the children of H. J., by his first wife, sue, as his heirs at law, to recover real estate owned by him. Defendant claims by deed from the widow of H. J. who was his second wife, and who as such widow claimed the property in controversy, and assumed, by deed, to convey it in fee to defendant. Complainant did not deraign title from the State, and this is assigned as error.

*Held:* It will be presumed, nothing to the contrary appearing, that the grantor of defendant claimed by inheritance from her husband, under the statute, and that, therefore, as complainants claim from a common source, they were not required to deraign title from the State. (*Post, pp.* 78-79.)

3. **SLAVE MARRIAGES.** Issue of, endowed with inheritable blood.

The statute declaring all free persons of color who were living together as husband and wife in this State, while in a condition of slavery, to be man and wife, and their children to be legitimately entitled to an inheritance in property theretofore acquired by said parents, being remedial in its nature should be liberally construed, and this court holds that it was intended to make legitimate and endow with heritable blood the issue of slave marriages, although, before emancipation and the enactment of said statute, such marriages had been dissolved according to the customs in force during the slave period, such customs being tantamount to a divorce. (*Post, pp.* 79-81.)

Code construed: Secs. 4179, 4198 (S.); 3285, 3303 (M. & V.); 2435a, 2447a (T. & S.).

Cases approved: Brown v. Cheatham, 91 Tenn., 98; Andrews v. Page, 3 Heisk., 653, 670.

Case distinguished: Shepherd v. Carlin, 99 Tenn., 64.

4. **HOMESTEAD.** Formal assignment of, not necessary, when.

Where the real estate of which an intestate dies seized is worth less than one thousand dollars, a formal assignment to the widow as homestead is not necessary to vest in her the life estate in such property—in such case it is "unerringly designated by law." (*Post, pp.* 81-83.)

Case cited: Briscoe v. Vaughn, 103 Tenn., 308.

5. **LIMITATION, STATUTE OF.** Does not run against the remainderman during existence of life estate.

No rule of law is better settled in this State than that the statute of limitations does not run against remaindermen or reversioners during the existence of a life estate and, therefore,

Carver v. Maxwell.

when the widow of an intestate took a life estate in certain realty, the statute of limitations did not begin to operate against the owners of the reversion until her death. (*Post, p.* 83.)

5. **COURT OF CHANCERY APPEALS.** Findings of fact, conclusive. Doctrine reaffirmed.

This court cannot go beyond the findings of fact reported by the court of chancery appeals. (*Post, p.* 83.)

---

FROM DEKALB.

---

Appeal from Chancery Court of DeKalb County.—T. J. FISHER, Chancellor.

WEBB & CANTRELL and ——— LAWSON, for Carver, et al.

T. W. WADE, for Maxwell.

---

MR. JUSTICE NEIL delivered the opinion of the Court.

Ejectment for a small lot of land lying in DeKalb county. The complainants, the children of a former slave, and the issue of a slave marriage, claim the property as heirs at law; and the defendant claims under a deed made by the widow, who was the second wife of the slave referred to.

The first marriage was both entered into and terminated during the slave period, according to the customs of that time appertaining to slave marriages in this State, and the second marriage was also entered into during the slave period; but cohabitation thereunder was continued after the slaves were emancipated, and up to the death of the man slave, Henry Johnson, referred to. The chancellor decided the controversy in favor of the defendant. The court of chancery appeals reversed his decree, and the defendant has appealed and assigned errors.

1. It is first insisted that the court of chancery appeals was in error in holding that the complainants and defendant claimed title from a common source, thereby relieving the complainants of the necessity of deraigning title from the State. The court of chancery appeals finds as a fact that complainants assert title as heirs at law of Henry Johnson, deceased, and that defendant claims under a deed made by Carroll Turney and Louisa Turney; that Louisa Turney was during the lifetime of Henry Johnson his second wife, and was left by him as his widow; and that she claims the land as such widow.

These are all findings of fact. It is objected that the court of chancery appeals could not rightly have concluded from these facts that the complainants and the defendants were claiming under a common source of title—Henry Johnson—because it is said that, as widow of Henry Johnson, the said Louisa could only

have claimed dower and homestead, whereas she purported to convey an estate in fee to the defendant.

But this is not a true statement of the law.   She could not only claim dower and homestead, but, if there were no legal heirs capable of inheriting the land, she could claim, as widow, the whole estate.   Shannon's Code, sec. 4165.   Where it is shown, as it is shown in the findings of the court of chancery appeals, that the widow claimed as widow, and that she purported to convey an estate in fee, the presumption would be, in the absence of anything to the contrary, that she was claiming under the section of the Code just referred to.   This presumption is strengthened in the present case by the fact that it does not appear that any children were born of the marriage of the said Henry or Louisa, and by the further fact that the defense, as appears from the findings of the court of chancery appeals, was based upon a denial of the fact that Henry Johnson left any heirs at law; the legitimacy of the complainants asserting title being denied.   The first assignment of error must therefore be overruled.

2.   It is next said that the court of chancery appeals erred in holding that the complainants, children of Henry Johnson by a former marriage, had any heritable blood.   The facts applicable to this point, as found by the court of chancery appeals, are as follows:   During the slave period, and according to the custom of marriage then in force (see *Brown* v. *Cheatham,* 91 Tenn., 98, 17 S. W., 1033), and with the consent of their re-

spective masters, the said Henry Johnson intermarried
with the mother of the complainants, and the complain-
ants were the offspring of that union. But also during
the said slave period, and according to the customs of
that time, and after the birth of the complainants,
Henry Johnson, with the consent of his master and of
the master of Louisa, intermarried with the latter; and
the effect of this was the same as if he had been divorced
from complainants' mother. From his intermarriage
with Louisa he continued to live with her as his wife
until he died, which event occurred a considerable time
after the emancipation of slaves in this State. It is
now contended that although, under the facts stated,
Henry Johnson and the mother of the complainants were
husband and wife when the complainants were born, by
virtue of the customary law then in force in this State,
yet, as it was incompatible with the institution of
slavery that slaves should own property, the right to in-
herit was not an incident of legitimacy, and that such
right could be conferred only by special statute, and that
the only statute we have bearing directly upon the ques-
tion is Acts 1865-66, c. 40 (Shannon's Code, secs. 4179,
4198), and that that statute does not cover such a case
as we have before us, because the marriage of Henry
Johnson and the mother of the complainants did not
continue through slavery, and was not in existence when
the act of 1865-66 was passed; the contention being that
that statute applies only to marriages contracted be-
tween slaves during the slave period, which still re-

mained in existence at the time the act was passed. This contention is shown to be unsound by the fact that the slave marriage which the court had under consideration in the case of *Andrews* v. *Page,* 3 Heisk., 653, 670, terminated in 1864 (Id., 658) by the death of the husband, yet the children of that marriage were held in that case to have been by that statute endowed with heritable blood, and rendered capable of taking their father's lands.

In addition to the authority of that case, we hold that the statute in question was remedial in its nature, and should be liberally construed; and, in the absence of authority, we should hold that it was intended to cover such a case as this record presents. Nothing here said, however, is intended to detract in any wise from the authority of *Shepherd* v. *Carlin,* 99 Tenn., 64, 41 S. W., 340, wherein it was held that collateral kindred could not take under this statute.

The statute referred to is carried into Shannon's Code in the following language: "All free persons of color who were living together as husband and wife in this State while in a state of slavery, are hereby declared to be man and wife, and their children legitimately entitled to an inheritance in any property heretofore acquired by said parents, to as full an extent as the children of white citizens are entitled by the laws of this State." Sections 4179, 4198.

3. It is next insisted that the court of chancery appeals erred in holding that the said Louisa had a life

110 Tenn—6

estate in the lot in question by virtue of her homestead right, because, as it is urged, the homstead was never assigned. The court of chancery appeals found as a fact that the lot was worth less than $1,000. This being true, there was no necessity for the assignment of the homestead in order to give the property that character, and to vest the life estate.

It does not appear that Henry Johnson left any estate other than this small lot, and, as it is now worth less than $1,000, the assignment of it by order of court would have been an idle ceremony. It was unerringly designated by the law, under the facts stated, as the homestead of the decedent's widow. We are not aware that this exact question has been heretofore decided in this State, but it has been decided that, where land worth less than $1,000 is levied on, it is unnecessary that there should be any formal assignment of the property as homestead; that a sale of the property for the homesteader's debt, subject to the homestead, is tantamount to, or has all the effect of a formal assignment. *Briscoe* v. *Vaughn,* 103 Tenn., 308, 52 S. W., 1068. The principle underlying the two cases is the same, which is that the law will dispense with barren technicalities; that when the thing which the supposed technicalities are intended to discover and define is already by its very nature, made wholly manifest, and defined and separated from all other objects as fully as it could be by the aid of the forms in question, these forms will be dis-

Carver v. Maxwell.

pensed with as immaterial and useless. The third assignment of error must therefore be overruled.

4. It is next assigned as error that the court of chancery appeals, after adjudging that the widow of Henry Johnson had a life estate in the property, also held, as a consequence thereof, that the statute of limitation did not begin to run against the complainants, or heirs at law and owners of the reversionary interest, until after the widow's death.

No rule of law is better settled in this State than that the statute of limitations does not run against remaindermen or reversioners during the continuance of the life estate. That the homestead, being worth less than $1,000, passed to the widow as a life estate without formal assignment, has been shown under the preceding head. The fourth assignment must therefore be overruled.

5. The fifth assignment necessarily fails, in view of what has been already said, and need not be further noticed.

6. The sixth and last assignment is overruled because there is nothing in the finding of facts contained in the opinion of the court of chancery appeals upon which to base the contention set forth in this assignment. We cannot look beyond the findings of fact reported by the court of chancery appeals.

Affirm the judgment.