ALICE WILSON *et al. v.* SAMUEL WILSON *et al.*

(*Jackson,* April Term, 1917.)

1. **SLAVES. Legitimation of issue.**

Shannon's Code, section 4179, legitimizing the issue of slaves living together as husband and wife in Tennessee, is inapplicible to parties not so living together in this State when the child in question was born. (*Post, pp.* 593, 594.)

Acts cited and construed: Acts 1887, ch. 151.

Code cited and construed: Sec. 4183 (S.).

2. **STATUTES. Validity. Title.**

Shannon's Code, section 4183 (Acts 1887, chapter 151), entitled an act to amend descent and distribution laws and certain sections of Revised Code, violates Const. art. 2, section 17, requiring amendatory acts to recite the title or substance of the amended law, since no official Revised Code exists, and the *descent and distribution laws include statutory provisions, court* decisions, etc. (*Post, pp.* 594-596.)

Cases cited and approved: Memphis St. Ry. Co. v. State, 110 Tenn., 598; Shelton v. State, 96 Tenn., 522.

Case cited and distinguished: Burnett v́, Turner, 87 Tenn., 126.

Constitution cited and construed: Sec. 17, art. 2.

3. **STATUTES. Validity.**

While a statute will not be declared unconstitutional unless it appears so beyond reasonable doubt, mere lapse of time will not validate an otherwise invalid law. (*Post, pp.* 596, 597.)

Case cited and approved: Henley v. State, 98 Tenn., 682.

Case cited and distinguished: Gribble v. Wilson, 101 Tenn., 616.

4. **EJECTMENT. Title to support action.**

In ejectment the complainant must recover on the strength of his own title. (*Post, p.* 597.)

Case cited and approved: Hubbard v. Godfrew, 100 Tenn., 150.

Wilson v. Wilson.

5. **EJECTMENT.**  Title from common source.  **Estoppel.**
 In ejectment a party cannot deny the common source of title,
   since he cannot dispute the title under which he claims.  (*Post*,
   *p*. 597.)

6. **CONSTITUTIONAL LAW.**  Validity of Statute.  **Estoppel to
  question.**
 Where complainants in ejectment claimed through an ancestor's
   second marriage, and Shannon's Code, section 4183, legitimizing
   the issue of such marriages, the defendants, claiming under
   the same ancestor's first marriage, are not estopped to deny
   the validity of the act, since they do not claim under a common
   source of title.  (*Post, p.* 597.)

FROM SHELBY.

Appeal from the Chancery Court of Shelby County.—F. H. HEISKELL, Judge.

R. L. BARTELS and C. L. WINCHESTER, for appellants.

T. R. BOYLE, HARRY SPEARS and ISRAEL H. PERES, for appellees.

MR. JUSTICE LANSDEN delivered the opinion of the Court.

This is an action of ejectment brought by complainants to recover an undivided interest in a tract of land situated in Shelby county. The chancellor decreed for the complainants, and the defendants have appealed and assigned errors.

The complainants are the widow and children of Joe Wilson, colored, deceased, and the defendants are his half-brothers. The proof fairly shows that the common ancestor, Phil Wilson, was married first to the mother of the defendants, and, after the death, to the mother of Joe Wilson, in the State of Mississippi, according to the custom of slaves. Therefore Joe Wilson, the ancestor of complainants, was a brother of the half blood to the defendants. Phil Wilson died the owner of the land in litigation. After the death of Susan, the mother of Joe, Phil Wilson removed himself and family from the State of Mississippi to the State of Tennessee, and resided here until his death.

Complainants predicate their claim to an interest in the land sued for upon section 4179 and section 4183 of Shannon's Code, as follows:

"4179. All free persons of color who were living together as husband and wife in this State while in a state of slavery, are hereby declared to be man and wife, and their children legitimately entitled to an inheritance in any property heretofore acquired, or that may hereafter be acquired, by said parents, to as full an extent as the children of white citizens are entitled by the laws of this State."

"4183. Section 4179 shall include in its provisions persons of color who have been living as man and wife in other States, and who have moved to this State; and sections 4180, 4181, and 4182, are appli-

cable to such persons and their issue, whether born
in this State or elsewhere.''

We think it clear that section 4179 does not apply
to the case made by complainants, for the reason
that Phil Wilson and Susan were not living together
as husband and wife in this State at the time of the
birth of Joe Wilson. This is conceded by complain-
ants, but they say that section 4183 applies and gives
them a joint interest with defendants in the estate
of their common ancestor. Section 4183 is drawn
from chapter 151, Acts of Tennessee 1887, which is
as follows:

''An act to amend the laws of descent and dis-
tribution; and to amend sections 3285, 3286, 3287,
and 3288 of the Revised Code.''

''Section 1. Be it enacted by the General Assem
bly of the State of Tennessee, that section 3285 of
Milliken & Vertrees' Code be so amended as to in-
clude in its provisions persons of color, who have
been living as man and wife in other States, and
who have moved to this State; and that sections
3286, 3287, and 3288 of Revised Code be applied to
such persons and their issue, whether born in this
State or elsewhere.''

A question is made upon the application of this
act. It is said for defendants that it does not apply
because Phil Wilson and Susan did not remove to
Tennessee together. It is replied to this that Susan
died before Phil, the head of the family, removed to

Tennessee, and that complainants are within the intention of the statute.  This is perhaps true, but, because of another question made by defendants, it is not necessary to decide the point.

The amendatory act is assailed as being unconstitutional for the reason that it violates section 17 of article 2 of the Constitution of this State, which requires that:

"All acts which repeal, revive or amend former laws, shall recite in their caption, or otherwise, the title or substance of the law repealed, revived or amended."

In *Burnett* v. *Turner,* 87 Tenn., 126, 10 S. W., 194, 195, it was held that an act was void which referred to the law to be amended as "section 2746 of the Revised Code."  In this case it was said:

"There is no 'Revised Code' of Tennessee, the legislature not having adopted or enacted any compilation of our statutes as such since the enactment of the Cole in 1858, which, being the first Code, is not itself a revision.  It therefore follows that it is not the amendment of a recognized law to amend the 'Revised Code,' nor is it necessarily the amendment of a law to amend any section of such supposed Code by number.  It may be that in point of fact a given section of any compilation to which the legislature might refer, and specifically identify in an amending act, would turn out to be a correct reprint of an existing law; but it is not so by force of its existence in such compilation, or by reason of its hav-

ing a particular sectional number therein, as is the case in the Code enacted. Therefore, to make an amending act valid, there must be something more than the recitation in the act of 1887. It will be remembered that, while we have no 'Revised Code' in law, we have in fact two valuable compilations of the statutes of Tennessee, to either of which this term is often applied, and to both of which it can be applied with equal accuracy.

"If it be assumed, as argued, that one of them is referred to, it cannot be told which. Neither is identified by any distinctive legal term applicable to it, or more applicable to it than to the other. Nor is the identification made or attempted by designation of the compilers or otherwise. So that not only is no law, by title or substance, recited in the repealing statute, but no law is referred to, and, worse still, no book in which it can be found is named or identified in the reference."

See *Memphis St. Ry. Co.* v. *State,* 110 Tenn., 598, 75 S. W., 730.

Under the foregoing authority the reference in the title of the act in question to the sections of the Revised Code must be eliminated, and the title read without reference to that part. So read, it would be "An act to amend the laws of descent and distribution." Such a title falls under direct condemnation in the case of *Shelton* v. *State,* 96 Tenn., 522, 32 S. W., 967. The act condemned in that case was en-

titled "An act to amend the criminal laws of the State."

We have no enactment of the legislature entitled the "Laws of Descent and Distribution." There is a body of law upon this subject, but it is found in the statutes enacted by the legislature and the decisions of this court, as well as decisions of other courts, the text-writers, and the great body of the common law which is in force in this State. So we think that the recital in the act is insufficient.

It is said that this statute has been in force so long that it should be upheld because of its age and the acquiescence of the public. To this we reply that we never declare any statute unconstitutional unless it appears beyond reasonable doubt that it violates some specified part of the fundamental law. That this act does so there can be no doubt. It has been held by this court that the lapse of a long length of time alone is not sufficient to validate an otherwise invalid law nor to prevent this court from declaring such a law to be invalid when it plainly appears to be so. *Gribble* v. *Wilson,* 101 Tenn., 616, 49 S. W., 736. In that case it was said:

"It is not the province or practice of this court to seek out constitutional defects in the acts of the General Assembly. Indeed, all intendments are in favor of the laws as passed, and the court will only pass upon their validity when it is raised and fully presented to the court. *Henley* v. *State,* 98 Tenn. (14

Pickle), 682, 41 S. W., 352, 1104, 39 L. R. A., 126. The fact, therefore, that an act has been construed and enforced and passed upon by this court is not conclusive of its validity and constitutionality, and this question may be raised at any time when the facts and pleadings justify its consideration.''

It is also said that the defendants are estopped to question the validity of the act because their claim of title is under it, and both parties claim to a common source. In actions of ejectment the complainant must recover upon the strength of his own title. *Hubbard* v. *Godfrey,* 100 Tenn. (16 Pickle), 150, 47 S. W., 81. The source of title common to both parties is an invalid enactment of the legislature. The reason underlying the rule forbidding either party in ejectment to deny the common source of title is that one cannot dispute the title by which he claims. The complainants claim under the marriage with Susan and through the amendatory act. The defendants are in possession, and while they are children of Phil Wilson, they were born of the first marriage, and are not children of Susan. They therefore do not claim to a common source of title. The amendatory act can have no application to them.