## MARGARET WALLACE v. LUCY BERRY, et al.

Middle Section.   November 22, 1927.

Petition for Certiorari denied by Supreme Court, February 4, 1928.

1. **Descent and distribution. Chapter 14 of the Acts of 1919, confers the rights of inheritance upon persons of legitimate descent who are collateral kindred of deceased negroes.**
   In an action brought by nephew and nieces of deceased negro who contested his will, held that chapter 14 of the Acts of 1919, conferred the right of inheritance upon persons of legitimate descent who are collateral kindred of deceased negroes; that if persons of color are descendants of free persons of color who were living together as husband and wife in this State while in a state of slavery, and declared by section 5, chapter 40 of the Acts of 1865-66 (Shan.'s Code, secs. 4179 and 4198) to be man and wife, they are entitled to inherit the property of their collateral relatives dying intestate and to whom they are next of kin.

2. **Descent and distribution. The Acts of 1919 does not limit the right of collateral inheritance to persons who are not the issue of slave marriages.**
   It extends this right to the kindred of any deceased negro, just as under our laws it is given to the kindred of white persons, provided such kindred are of legitimate descent. Negroes not born in slavery nor the issue of slave marriages have had the same rights of inheritance as white persons ever since they became citizens. The Act of 1919 is so comprehensive that it includes all negroes of legitimate birth who are collateral kindred of a deceased negro.

3. **Statutes. Chapter 14 of the Act of 1919 is a remedial statute.**
   Chapter 14 of the Act of 1919 held to be remedial in its nature and should be liberally construed.

4. **Descent and distribution. Children of a slave marriage are entitled to inherit from their uncle under chapter 14 of the Act of 1919.**
   In an action by nieces and nephews to contest the will of their uncle where it was insisted that they were not entitled to participate in his estate

as heirs and the evidence showed that they were children of a slave marriage held that they were entitled to share in the estate and might maintain the action.

5. **Descent and distribution. Illegitimate child not entitled to inherit as a collateral heir of father's brother.**

In an action to contest a will where the evidence showed that one of the plaintiffs was an illegitimate child of the brother of deceased, held that that plaintiff was not entitled to maintain the action.

6. **Wills. Children of a slave marriage are entitled to inherit from their uncle and may therefore contest his will.**

In an action by nieces and nephews to contest the will of their uncle where it was insisted that they were not entitled to maintain the action because they could not inherit under the law, held, that if they were children of a slave marriage they were entitled to inherit under chapter 14 of the Acts of 1919, and might maintain the action.

Appeal in Error from Circuit Court, Davidson County; Hon. A. B. Neil, Judge.

Reversed as to Lizzie Miller; otherwise affirmed.

R. T. Smith and J. G. Stephenson, of Nashville, for plaintiff in error.

Richard P. Dews, of Nashville, for Lucy Berry and Lizzie Miller.

G. B. Kirkpatrick and H. B. Shofner, of Nashville, for Anderson Lewis Miller.

DeWITT, J. The question presented is whether or not Lucy Berry, Lizzie Miller and Anderson Lewis Miller, as nieces and nephew of Sam Miller, a negro, are entitled to contest his will. Sam Miller died on December 27, 1926, testate, naming Margaret Wallace as the executrix and beneficiary under his will. Upon the probate of the will Lucy Berry, Lizzie Miller and Anderson Lewis Miller filed petitions to contest the will as next of kin to the testator. The right of each of them to contest the will was denied by the executrix. Upon the hearing the judge of the county court held that said petitioners were nieces and nephew respectively, of the testator, being legitimate children of his deceased brothers, and that they, as such nieces and nephew, being of the next of kin, have the right to contest his will. Upon appeal the Circuit Judge reached the same conclusions and directed that a writ of certiorari issue, if necessary, directing the county court to send up the will of Sam Miller to the end that the will contest be tried in the circuit court. After motion for a new trial was made and overruled, the proponent, Margaret Wallace, executrix, appealed in the nature of a writ of error to this court.

The assignments of error present three questions for determination:

1. Does the Act of 1919, Chapter 14, extend the right of collateral inheritance to the issue of slave marriages?

2. Were either Lucy Berry or Anderson Lewis Miller born of a lawful slave marriage?

3.   Was Lizzie Miller born of lawful wedlock?

Chapter 14 of the Acts of 1919 is as follows:

> "The collateral kindred of a deceased negro shall inherit his or her real and personal property in the same manner and to the same extent that the collateral kindred of a deceased white person inherits his or her real and personal property under said laws."

It is insisted that this act is merely declaratory of the law already in force at the time of the passage of the act; that it creates no new rule of inheritance. It is true that it does not affect the rule that an illegitimate person is incapable of inheriting, except from the mother. But we are of the opinion that this act conferred the right of inheritance upon persons of legitimate descent who are collateral kindred of deceased negroes; that if persons of color are descendants of free persons of color who were living together as husband and wife in this State while in a State of slavery, and declared by section 5, chapter 40 of the Acts of 1865-66 (Shann. Code, secs. 4179 and 4198) to be man and wife, they are entitled to inherit the property of their collateral relatives dying intestate and to whom they are next of kin.

The Act of 1919 does not limit the right of collateral inheritance to persons who are not the issue of slave marriages. It extends this right to the kindred of any deceased negro just as under our laws it is given to the kindred of white persons, provided such kindred are of legitimate descent. Negroes not born in slavery nor the issue of slave marriages have had the same rights of inheritance as white persons ever since they became citizens. The Act of 1919 is so comprehensive that it includes all negroes of legitimate birth who are collateral kindred of a deceased negro. To hold otherwise would be to fail to give a literal interpretation to the act. It was manifestly intended as an enlargement, by amendment, of the provisions of the said section 5 of chapter 40 of the Acts of 1865-66, which is as follows:

> "All free persons of color who were living together as husband and wife in this State while in a state of slavery, are hereby declared to be man and wife, and their children legitimately entitled to an inheritance in any property heretofore acquired, or that may hereafter be acquired, by said parents, to as full an extent as the children of white citizens are entitled by the laws of this State."

This statute has been frequently construed as not extending the right of inheritance beyond the lineal descendants of the parents. Shepherd v. Carlin, 99 Tenn., 64, 41 S. W., 340; Carver v. Maxwell, 110 Tenn., 75, 71 S. W., 752. The history of this act and the motives prompting the enactment of it have been extensively set forth

in our reported cases, and repetition of them is now unnecessary. In Andrews v. Page, 3 Heisk., 653, it was said that this act, having been passed to ratify marriages good, during the institution of slavery, by the prevailing usage of this State, and to create a right of inheritance conformable to such usage, and the changed condition of the slave, was in furtherance of good morals, and of the best interests of the State. The Act of 1919 was clearly intended to create an additional right of inheritance conformable to the now prevailing usage of this State, out of a larger consideration of the status of the negro in our citizenship.

It is undisputed upon this appeal, that Lucy Berry and Lizzie Miller are children of Harkless Miller, and Anderson Lewis Miller is a son of Step Miller, brothers of the testator, Sam Miller; but are they of legitimate descent from these parents? In Brown v. Cheatham, 91 Tenn., 97, 100, 17 S. W., 1033, Mr. Justice Lurton said:

"It is true that our statutory marriage and divorce law has never been regarded as applying to the slaves held in this State. Yet it by no means followed that slaves could not enter into de facto marriages to which many of the consequences of the statutory marriage attach. This subject was fully and ably considered by this court in the great case of Andrews v. Page, where the opinion was delivered by Judge Nelson. After reviewing the history of slavery in this State, and the status of the slave as a person in the light of the decisions of the courts of this State, he summed up the ante bellum law upon the subject of slave marriages in these words: 'We hold that a marriage between slaves, with the assent of their owners, whether contracted in common law form or celebrated under the statute, always was a valid marriage in this State, and that the issue of such marriages were not illegitimates.' "

In Carver v. Maxwell, 110 Tenn., 75, 71 S. W., 752, it was declared that the statute chapter 40 Acts of 1865-66 (Shan. Code, secs. 4179, 4198) declaring all free persons of color who were living together as husband and wife in this State, while in a condition of slavery, to be man and wife, and their children to be legitimately entitled to an inheritance in property theretofore acquired by said parents, being remedial in its nature should be liberally construed; and in that case the court held that said statute was intended to make legitimate and endow with heritable blood the issue of slave marriages, although, before emancipation and the enactment of said statute, such marriages had been dissolved according to the customs in force during the slave period, such customs being tantamount to a divorce. This case is very helpful as giving a rule of liberal construction and an illustration of the beneficent application of such rule. It is proper to extend this rule in favor of those com-

ing within the class benefited by chapter 14 of the Acts of 1919, the collateral kindred.

Lucy Berry was born in 1876. Her parents were slaves of a man named Williams in Franklin county. Her mother, Ellen Turner, testified at the hearing of this cause. She said that Harkless Miller, Sam Miller and Step Miller were full brothers, and sons of Alfred Miller, a slave; that she and Harkless Miller were married during the Civil War, "just a little while before the Yankees came about here." This being true, they were married in a state of slavery, because the emancipation proclamation of President Lincoln did not apply to the section where they were living. She testified that she was married to Harkless Miller by her owner, Bill Williams, in the dining room of his home near Cowan in Franklin county; that Williams read to them from the Bible, had her and Harkless join hands and pronounced them man and wife. She said that her sister threw a broom down and caused her to step over it—a symbol of slave marriage used in those days.

It clearly appears from this testimony that Ellen and Harkless were validly married, and with the consent of their master, while in a state of slavery, and that they came within the provisions of the Act of 1865-66. It further appears from Ellen's testimony that she and Harkless Miller lived together as husband and wife for sometime thereafter, and that three children, Lucy, Alice and Charles were born to them. Lucy is this Lucy Berry. There is no evidence that Ellen and Harkless were ever divorced, or that they were even separated before the close of the Civil War. After the close of the Civil War and after the birth of their first child, Charlie; Harkless Miller came to Davidson county and was later followed by Ellen. After an absence of two years Harkless returned to Ellen and they again occupied the relation of husband and wife for several years and two children, Alice and Lucy were born to them. Harkless later again deserted Ellen and again returned to her, and soon thereafter her father drove him away, he went to the State of Kansas and died and Ellen later married a man named Turner.

It is impossible, therefore, to sustain the contention that Lucy Berry is not a legitimate daughter of Harkless and Ellen.

It appears that Lizzie Miller is a daughter of Harkless Miller, being about fifty-seven years of age; that her mother's name was Mag Miller, a woman with whom Harkless Miller lived during the time, or a portion of the time of his desertion of Ellen. There is no evidence of any formal marriage of Harkless and Mag Miller, and as there is no evidence of divorce between Harkless and Ellen it does not appear that any formal marriage between Harkless and Mag would have been valid. There is evidence that Harkless and Mag did live together as if they were man and wife and were considered

by their acquaintances and neighbors to be married; but such evidence would not even tend to establish a valid marriage between them. There is abundant evidence that the testator, Sam Miller recognized Lucy Berry and Lizzie Miller as the daughters of his deceased brother, Harkless Miller, but the evidence, in our opinion, clearly shows that Lizzie Miller is of illegitimate birth, and in fact there is no evidence to the contrary.

Anderson Lewis Miller, son of Step Miller and Mary Lewis, was long recognized by Sam Miller as his brother's son. This recognition and the associations between Anderson and Sam are abundantly shown by the testimony of a number of old negroes who were acquainted with them and who have no interest in this litigation. Step Miller died many years ago. His wife, Mary, remarried, is still living, but her mind is now too feeble for her to give testimony. However, her son, Henry Bone, a member of the Nashville Fire Department, testified that Anderson was his half-brother; that his mother told him that she and Step Miller were married in Winchester years ago. When asked if this marriage occurred during the days of slavery, he said that he guessed that it did, he did not know. He said that his mother had told him that she was a slave of Hayden March, near Winchester, and that at a party one night she married Step Miller, the father of Anderson; that he never heard of any ceremony being performed or any license issued for the marriage. Anderson testified that he was seventy-four years old; that his mother's first husband was his father, Step Miller; that his mother and father were married during slavery; that he was the only child of said marriage; that his father went away from Nashville and died; that he, Anderson, was born during slavery of the slave marriage. There is some testimony tending to throw some doubt upon the truth of these statements, but disregarding this countervailing testimony, as we must do on appeal in error, we find that there is abundant material testimony tending to establish the legitimacy of the birth of Anderson Lewis Miller as the son of Step Miller, brother of the testator Sam Miller.

A close scrutiny of the testimony of all of these witnesses has impressed the court with the conviction that they were honestly trying to tell the truth. They so impressed the County Judge and the Circuit Judge, and we see no reason whatever for disturbing their conclusions as to Lucy Berry and Anderson Lewis Miller. As aforesaid, we are unable to hold that Lizzie Miller is entitled to contest the will of Sam Miller, because the evidence fails to show that she is a legitimate person, but we do hold that Lucy Berry and Anderson Lewis Miller are entitled to contest said will. The judgment of the circuit court is affirmed as to Lucy Berry and Anderson Lewis Mil-

ler, but as to Lizzie Miller, said judgment is reversed, and her petition is dismissed. The cost of the appeal will be adjudged against Margaret Wallace and the surety on her appeal bond.

Faw, P. J., and Crownover, J., concur.