EDWARD EVANS

*v.*

AMANDA YOUNG et al.

(*Jackson,* April Term, 1956)

Opinion filed February 8, 1957.

W. H. FISHER, Memphis, for petitioner.

DONELSON & ADAMS, and ERNEST WILLIAMS, III, Guardian Ad Litem, Memphis, for respondents.

MR. JUSTICE BURNETT delivered the opinion of the Court.

The question for determination here is: Do the collateral heirs of a deceased Negro born of slave parents in a foreign State take real estate left by him in preference to the devisees of his wife? The Chancellor and the Court of Appeals held that these collateral heirs did inherit from the child of this slave marriage of a foreign State. The matter has been ably briefed and argued and we now have the question for determination.

Cornelius Walker, a Negro, was born in Mississippi in 1864. At the time of his birth slavery had not been abolished in the State. He was the only child of Jeff and Amanda Walker, who were at all times residents of the State of Mississippi. Jeff Walker had no brothers or sisters. Amanda Walker was born at Statom and had two brothers and two sisters, who claim the property in question.

Jeff and Amanda Walker lived together as man and wife, and held themselves out as such and were known in the community in which they lived prior to and at the birth of Cornelius Walker, as husband and wife. They so held themselves out until the death of Jeff Walker in 1885 in Mississippi. The mother remarried and died in 1927.

Cornelius Walker married Millie Bush in Mississippi and later moved to Tennessee where they lived for a great number of years prior to Cornelius' death in 1937, when he was a resident of Shelby County, Tennessee. His wife Millie continued to live in Memphis, Tennessee until her death in 1953. Neither Cornelius nor Millie had any children. At the time of the death of Cornelius he held

title to several pieces of real estate described in the pleadings and it is the title to these parcels of real estate which is the dispute of this law suit. After Cornelius' death Millie continued to collect the rentals from the property until her death. Millie left a will which is not attacked in this lawsuit in which she willed the property to those of her choosing. The original bill was filed to clear up the situation and was filed on the theory that Cornelius Walker, being a Negro born in a slave State before slavery was abolished, was illegitimate, and under the laws of this State that the inheritance from him was governed by our statutes controlling illegitimates, Section 31-105, T.C.A. There is no attack made on the legitimacy of the collateral kin of Cornelius.

The record contains certified copies of Chapter 4, of the Public Acts of Mississippi of 1865, and of Section 22, Article 12, of the Constitution of Mississippi, 1869. Under these Mississippi laws it is plain that Cornelius Walker was legitimated as the child of Jeff and Amanda Walker. Section 8, of the Mississippi Act is:

"Be it further enacted, That all freedmen, free negroes and mulattoes, who do now and have heretofore lived and cohabited together as husband and wife shall be taken and held in law as legally married, and the issue shall be taken and held as legitimate for all purposes."

By referring to the portion of the Constitution of Mississippi, at the time, it is shown that whether these children were born before or after the Constitution was ratified that they were legitimated. Thus under the Mississippi law Cornelius was legitimated in that State and that was his status when he moved to Tennessee. In *Finley v.*

*Brown,* 122 Tenn. 316, 123 S.W. 359, 362, 25 L.R.A., N.S., 1285, this Court declared the applicable law here to be applied as follows:

"There is no doubt whatever, under the authorities in this country, that a child who, in a foreign state in which both it and the adoptive father are domiciled, has acquired under the laws of that state the status of child by adoption, must, under the comity of states, receive recognition of its status as child in every other state having substantially similar adoption laws, and must be held capable of succeeding to real property in accordance with the laws of the state where the prop-property lies, if adopted children are capable of inheriting under the local law of the latter state. * * *

"Inheritance is governed by the *lex rei sitae;* but legitimacy is to be ascertained by the *lex domicilii.*"

As was said above the statutes and Constitution of Mississippi legitimized Cornelius Walker. We have a similar statute in this State which was enacted for the purpose of legitimizing the children of slave marriages of those slaves who lived in this State, Section 31-302, T.C.A. The purpose of such statutes is to validate these slave marriages and to render their children capable of inheriting. *Carver v. Maxwell,* 110 Tenn. 75, 71 S.W. 752. This Court held in that case that such statutes should be liberally construed in order to carry out the beneficent public policy of the State, but those people claiming the benefit of such statutes must bring themselves within the terms of the statute. We have further held in reference to the children of these slave marriages that the laws of the jurisdiction where the children were legitimized follows the person and should be sustained wherever he

may go although it is necessary that he yield to the public policy of the State of his adoption as far as inheritance is concerned. *Cole v. Taylor,* 132 Tenn. 92, 177 S.W. 61. (This is a collateral inheritance case). In the same volume is the case of *Napier v. Church,* 132 Tenn. 111, 177 S.W. 56, which is a lineal descendant heirs case. In that case this Court held that for us to recognize the legitimacy of the issue of the slave marriage of the foreign State then the law of that State must be clear and convincing. The Court then went on to (neither the father nor the mother were residents of the State of Tennessee nor the heir claiming nor had they ever lived together as husband and wife in this State), hold that the laws of Louisiana attempting to legitimize this slave marriage were very uncertain and were not clear and convincing. Thus it was that in *Napier v. Church, supra,* this Court refused to recognize the lineal descendant of Church under a purported slave marriage of Louisiana.

The question before the Court in *Cole v. Taylor, supra,* (132 Tenn. 92, 177 S.W. 63) was whether or not, "on the grounds of comity between the states" the laws of Georgia and Alabama or Mississippi granted "to ex-slaves coming from one or the other of these states a right of collateral inheritance which the Legislature of our own state has refused to persons born of slave marriages in the state of Tennessee". The Court herein said that this State had settled the question under our Act hereinbefore referred to, Sec. 31-302, T.C.A., that we only recognized the children of slave marriages of this State of direct inheritence from the parents. In doing so this Court in *Cole v. Taylor, supra,* quoted again and with approval from *Shepherd v. Carlin,* 99 Tenn. 64, 41 S.W. 340, as follows:

" 'We are of opinion that, by the plain terms of this act, the right and power of inheritance is conferred only as to such property as may descend from parents, and that no right of collateral inheritance is conferred by the act. This was no doubt the intention of the General Assembly, and is the clear meaning of the words of the act, which can admit of no other construction.' "

This Court therein, that is, in *Cole v. Taylor,* went on then to say that:

"Tennessee has seen proper not to grant the right of collateral inheritance to such people, had their parents lived together as husband and wife in this state. It cannot be expected that the courts out of mere comity shall grant to citizens coming from other states a right which this state does not grant its own citizens."
And further that:

"Their subsequent legitimation, wherever it may have occurred, must yield to the statute of Tennessee limiting the right of such persons to inherit only from the parent. To hold otherwise would discriminate in favor of nonresidents coming to this state, as against the policy of our own law, and to confer a right upon them not common to natives of the state."

Thus we see what the holding of *Cole v. Taylor* is. This is a case which is principally relied upon by the petitioner herein.

*Cole v. Taylor, supra,* was handed down in 1915, as was *Napier v. Church, supra.* Two years later the Court of Civil Appeals in *Davidson v. Jennings,* 8 Tenn. Civ. App. 355, again held that the right of inheritance did not extend beyond the lineal descendants of parents. This

Civil Appeals case was in 1917. The Legislature of 1919, by Chapter 14 of the Public Acts of that year, passed an Act in which it was enacted,

"That the collateral kindred of a deceased negro shall inherit his or her real and personal property in the same manner and to the same extent that the collateral kindred of a deceased white person inherits his or her real and personal property under existing laws."

By the Public Acts of 1929, Chapter 133, the Legislature added to the 1914 Act. This amendment though did not affect in any way the provision above quoted and only provided that such property would go to these collaterals if it had not escheated to the State or that no other substantial right had intervened. This Act is carried in the Code at the present time as Section 31-303, T.C.A. and is in the Chapter of the Code under Descent and Distribution. The heading of the chapter is "Persons Of Color," and sec. 31-303 reads as follows:

"The collateral kindred of a deceased person of color shall inherit his estate, real and personal, as in case of the collateral kindred of a white person, and regardless of the date of the death of such person of color, provided, that the property has not passed to the state by escheat enforced, and, further, that no substantial right of another person in the property has intervened."

It is the very earnest contention of the respondents that this Act of 1919 as amended by 1929 and now codified, extended the right of inheritance to collaterals of a deceased Negro and that since it contains no reference whatsoever to the place of birth of deceased Negroes that

the rule of comity is applicable under the rationale of the opinion of *Cole v. Taylor, supra,* and that this being true the Court must and should recognize that Cornelius Walker is a legitimate for the purpose of recognition of the respondents as his heirs at law. The Chancellor and the Court of Appeals sustained this contention.

This Court in *Carver v. Maxwell, supra,* held that such an act should be liberally construed in order to carry out the beneficent public policy of the State that such an act does state the public policy of the State. The statute, that is, 1919, 1929 Acts as codified, extends the right of collateral inheritance to the kindred of any deceased person of color or Negro just as under the laws such a right is given to white persons provided that such people, that is, collaterals, are of legitimate descent. In this case there is no question made as to the collaterals of Cornelius Walker being of legitimate descent. Thus it seems to us that the statute is so comprehensive that it includes all Negroes of legitimate birth who are collateral kindred of this deceased Negro. The laws of Mississippi made Cornelius Walker legitimate.

The Court of Appeals in *Wallace v. Berry,* 6 Tenn. App. 248, held that this 1919 Act, as amended and codified did extend to collateral heirs of the issue of slave marriages of this State. *Certiorari* was denied by this Court in that case. That same Court speaking through the same Judge in *Rhea v. Redus,* 7 Tenn. App. 478 (no *certiorari* applied for) held that this same Act, 1919 Act as amended, etc., did not apply because of the nonresidence of the slave parents at the time of the birth. It might be well to say that neither the Act nor the question was before the court and that was purely a gratuitous statement on the part of the Court. The statements made

by the same Court in *Wallace v. Berry, supra,* are not applicable here because Cornelius Walker's parents were born outside of the State.

■ That Court in *Wallace v. Berry, supra,* made certain statements though which were applicable to that case which we think for reasons heretofore and hereinafter expressed are likewise applicable to the facts of the instant case. We therefore adopt certain language used in that case as a correct rule to apply to this case. That Court said:

"The Act of 1919 does not limit the right of collateral inheritance to persons who are not the issue of slave marriages. It extends this right to the kindred of any deceased Negro just as under our laws it is given to the kindred of white persons, provided such kindred are of legitimate descent. Negroes not born in slavery nor the issue of slave marriages have had the same rights of inheritance as white persons ever since they became citizens. The Act of 1919 is so comprehensive that it includes all negroes of legitimate birth who are collateral kindred of a deceased negro * * *. The Act of 1919 was clearly intended to create an additional right of inheritance conformable to the now prevailing usage of this State, out of a larger consideration of the status of the negro in our citizenship."

■ The rationale of the question here determined was, we think, determined by this Court in an able opinion prepared for the Court by the present Chief Justice in the case of *Smith v. Mitchell,* 185 Tenn. 57, 202 S.W.2d 979, 983. In that case we held that where the putative father of an illegitimate and mother of such child are married in a foreign State or that if there is an adoption

of a child in a foreign State and under the statute of that State the child is legitimated, that thereafter such child inherits from the putative father or adopting parent according to the laws of descent in Tennessee as if they had been born legitimate in Tennessee. Under the facts of that case the putative father and mother had adult bastard children and went over into the State of Alabama and were there married. This Court properly held that since under the laws of Alabama these children were legitimated that then these legitimated children would inherit under our laws. A bastard under the laws of this State who is legitimized by the laws of another State is recognized and treated as legitimate so far as inheriting property in this State. Why should we make any difference in the issue of slave marriages who are legitimated by the foreign State and another?

When we compare the statutory and constitutional law of the State of Mississippi with that of Tennessee in legitimizing Cornelius Walker we find that these laws are very similar. It seems to us that under the authority of *Smith v. Mitchell, supra,* that therein we are expressing and have expressed the present public policy of this State to a great extent. This policy of course should be, and is, where possible, to try to make a person legitimate rather than illegitimate. There is no reason to make any distinction between the legitimation of Cornelius Walker by the laws of Mississippi and in making the children in *Smith v. Mitchell,* legitimate which were made legitimate by their parents being married under the laws of Alabama. There is no distinction in principle that can be made.

In *Smith v. Mitchell, supra,* this Court again recognized and properly so the statement heretofore quoted

from *Finley v. Brown, supra.* This Court said in *Smith v. Mitchell, supra,* that:

"In other words, if the child is capable of inheriting in the foreign state, he, being legitimated by marriage of the parents and by force of law, is thereby legitimated in Tennessee, and is capable of inheriting lands lying in this state. But the rights acquired under foreign adoption or legitimation will not be enlarged so as to confer rights of inheritance in this state contrary to our own statute of descent."

And, we further said in that case that:

"We think they are substantially similar when they effectuate the same result, that is, giving an illegitimate the status of a legitimate child. But the right of a child legitimated in a foreign state to inherit lands in Tennessee is exactly the same as a child legitimated by statutory proceeding in Tennessee, thus giving the laws of a foreign state no extraterritorial force."

And:

"As to the devolution of property of the adopting or legitimating parent, we adhere to the majority rule that the status of the child will follow him to, and be recognized in, the state where the property is situated, entitling him to inherit it if, and to the extent, that the law of this state allows such child to inherit."

Thus we must conclude that by the Acts of the General Assembly of 1919 as amended and codified, heretofore cited, and under the authority of *Smith v. Mitchell, supra,* that the public policy of this State now is to recognize as legitimate Cornelius Walker. Therefore the result is that his collateral heirs are entitled to inherit

as the collaterals of any other Negro in this State or white person as far as that is concerned. Having reached this conclusion the judgment of the Chancellor and the Court of Appeals must be affirmed.

TOMLINSON, Justice (concurring).

For immediate clarity I quote the pertinent 1919 statute:

"The collateral kindred of a deceased person of color shall inherit his estate, real and personal, as in the case of the collateral kindred of a white person." T.C.A. sec. 31-303.

The language just quoted is entirely free of doubt or ambiguity. It is, in my judgment, susceptible to but one interpretation, — to-wit, that the collateral kindred of Cornelius Walker, who was a legitimate issue of a slave marriage, inherited his estate, he having died intestate, a resident of Tennessee.

This collateral kin may not be deprived of the inheritance which is theirs under the provisions of this plain, unambiguous statute without reading into that statute under the rules of judicial construction the provision that it, the statute shall not apply if the slave parents of the deceased did not live in Tennessee.

It is argued in behalf of the widow of Walker that the Court should so construe this 1919 statute as to add the supposed exception above stated. This insistence is based on the fact that a statute enacted in 1865 referred to in the majority opinion did not permit the issue of a slave marriage to inherit unless the parents of such issue lived in this State.

The rule with reference to the construction of a statute in the light of this 1919 statute prohibits the Court from reading into it such an exception, in my opinion. That rule is stated in *Atlantic Coast Line Railroad Co. v. Richardson,* 121 Tenn. 448, 459-460, 117 S.W. 496, 499, as follows:

"There is no doubt, in construing statutes, that it is the duty of the courts to give effect to the intent of the lawmaking power, and to seek for that intent in every legitimate way; but it is well settled that this intention must be sought primarily in the language of the act itself, as the presumption is that the Legislature has selected apt words for the expression of its will. The necessary effect of this is, where it is found upon examination that the language of the act is free from doubt or ambiguity, and expresses an intelligent and definite meaning, the courts are bound to assume that this meaning is that which the Legislature had in mind. To such an extent has this rule been recognized that, though the court is satisfied some other or different meaning was behind the legislation, and though a literal interpretation might defeat what was well understood to be the purpose of its enactment, 'still the explicit declaration of the Legislature is the law, and the courts are not at liberty to depart from it.' It is only where the statute is ambiguous, or lacks precision, or is fairly susceptible to two or more interpretations, the intended meaning of the act 'must be sought by the aid of all pertinent and admissible considerations.' "

But if I were inclined to take up the risky business of judicially saying by way of construction that the Legis-

lature meant less or more than it unequivocally and in simple language said, I would be deterred by the legislative history of the State on the subject in question between the enactment of 1865 and the 1919 statutes respectively.

Twenty-two years after the enactment of this 1865 statute, the Legislature undertook to broaden it by providing that there should fall within it children of slave marriages "who have been living as man and wife in other States, and who have moved to this State," and that it "be applied to such persons and their issue, whether born in this State or elsewhere." Pub. Acts 1887, c. 151. The Act was held to violate the caption clause of the Constitution. It is important, however, in that it discloses a desire upon the part of the Legislature to make more liberal the inheritance laws wherein are involved slave marriages. *Wilson v. Wilson,* 137 Tenn. 590, 593-594, 195 S.W. 173.

Pursuant to, I should say, ordinary dictates of justice, this Court took note of this class of people in *Carver v. Maxwell,* 110 Tenn. 75, 81, 71 S.W. 752, 753, to the extent of observing that a statute of that kind is "remedial in its nature, and should be liberally construed."

In 1917 the Court of Civil Appeals in *Davidson v. Jennings,* 8 Tenn. Civ. App. 355, reaffirmed previous holding that "there is no inheritability among the collateral kin of those born in slavery."

To me the significance of *Davidson v. Jennings* decided in 1917 is that at the very next term of the Legislature, 1919, there was enacted Section 31-303, T.C.A. quoted at the beginning of this opinion.

It is reasonable to conclude that this 1919 statute was enacted as a direct result of the 1917 decision. Indeed it seems to me a little unrealistic to conclude otherwise, particularly in view of the fact that the Legislature had for years indicated a more liberalizing intention as to making inheritance from the issue of slave marriages more nearly on an equal with inheritance from the legitimate issue of white parents.

I would think, therefore, that we are justified in concluding that the 1919 statute intended to provide just what it says, towit, that the collateral kindred of a deceased person of color shall inherit the estate of the intestate deceased to the same extent as the collateral kindred of white people.

As I view it, the plain language of the 1919 statute as well as the legislative history preceding its enactment, if such history is to be considered, requires a holding by this Court that the collateral kin of Walker inherit his estate.

SWEPSTON, Justice (dissenting).

I respectfully dissent from the majority opinion for the following reasons. In the final analysis the real question is the proper construction of Chapter 14 of the Acts of 1919, which provided as follows:

"The collateral kindred of a deceased person of color shall inherit his estate, real and personal, as in the case of the collateral kindred of a white person."

This Act was amended by Chapter 133 of the Public Acts of 1929, as the same now appears in T.C.A. sec. 31-303, but said amendment is not material in this discussion.

The majority opinion construes this Act according to the letter thereof, in complete disregard of the legislative history and judicial decisions expressing public policy in regard to the right of the direct descendants of slave marriages and of the collateral kin to inherit, thereby producing a result which seems to me to be quite bizarre and without any foundation of reason. I shall seek to demonstrate the point after calling attention to the statement in the case of *Memphis St. Railroad Co. v. Byrne,* 119 Tenn, 278, 322, 104 S.W. 460, 471, which is as follows:

"Ambiguity in a statute may arise either from confusion or indefiniteness in the language used, or the consequences of strict adherence to the literalism of that language. In Lewis' Sutherland on Statutory Construction, sec. 377, it is said: 'Uncertainty of sense does not alone spring from uncertainty of expression. It is always presumed, in regard to a statute, that no absurd or unreasonable result was intended by the Legislature. Hence if, viewing a statute from the standpoint of the literal sense of its language, it is unreasonable or absurd, and obscurity of meaning exists, calling for judicial construction, we must in that event look to the act as a whole, to the subject with which it deals, to the reason and spirit of the enactment, and thereby, if possible, discover its real purposes; and, if such purposes can reasonably be said to be within the scope of the language used, it must be taken to be a part of the law, the same as if it were plainly expressed by the literal sense of the words used. In that way, while courts do not and cannot properly bend words out of their reasonable meaning to effect a legislative—purpose, they do give to words

a literal or strict interpretation within the bounds of reason, sacrificing literal sense and rejecting interpretation not in harmony with the evident intent of the lawmakers, rather than that such intent shall fail.' ''

As illustrative of disregarding literal language of an Act to arrive at the intent of the Legislature, see *Tennessee Title Co. v. First Fed. Savs. & Loan Ass'n,* 185 Tenn. 145, 203 S.W.2d 697.

As stated in the majority opinion the contest is between the collateral heirs of Cornelius Walker, a Negro, and a devisee, Edward Evans, of his widow Millie Bush Walker; the marriage of Cornelius Walker's parents was validated by the laws of Mississippi, where they always lived and Cornelius Walker himself was legitimated by said laws. There is no question about the legitimacy of the collateral heirs of Cornelius Walker.

Now the history of the laws of Tennessee by which the right of inheritance was conferred upon the direct issue of slave marriages and of collateral kin is as follows: The Acts of 1865-1866, Chapter 40, section 5, as the same now appears in T.C.A. sec. 31-302 provided as follows:

"All persons of color who are *living together as husband and wife in this state,* prior to 1865, are declared to be man and wife, and their children legitimately entitled to an inheritance in any property of said parents, to as full an extent as the children of white citizens.'' (Emphasis ours.)

In several cases it was successively held that this statute applied (1) only to those persons who were living together as husband and wife *in this State,* (2) to the lineal descendants of such parents, and (3) no right of collateral inheritance is conferred by the Act.

Chapter 151, Acts 1887, held unconstitutional in *Wilson v. Wilson,* 137 Tenn. 590, 195 S.W. 173, was an attempt to include such persons as had moved to Tennessee.

In the case of *Cole v. Taylor,* 1915, 132 Tenn. 92, 177 S.W. 61, the facts were exactly analogous to the facts of the instant case except that the claimant of the real estate was Alice Cole who was a sister of her deceased brother, Tom Pollard, and these two were children of slave parents who were married according to the custom of slave marriages in Georgia but who had never lived in Tennessee. These two children had been legitimated under the laws of a foreign State before they came into Tennesse.

The Court construed the statute as above stated and further said that while these two children of slave parents had been legitimated in a foreign State, yet that relationship must yield to the policy of our own law in its control of the descent of real property within its borders and that Tennessee has seen proper not to grant the right of collateral inheritance to such people, unless their parents lived together as husband and wife in this State; it cannot be expected that the Courts out of mere comity shall grant to citizens coming from other states a right which this State does not grant to its own citizens, that is the right of collateral inheritance.

Then in *Napier v. Church,* 1915, 132 Tenn. 111, 177 S.W. 56, there was involved the right of a direct decedent to inherit where the parents had never lived in the State of Tennessee. In that case the Court held not only as stated in the instant majority opinion that the law of Louisiana was not clear and convincing with reference

to establishing the legitimacy of the issue of slave marriage and, therefore, the Tennessee Court would not hold that the issue had been legitimated, but the opinion went further and held that no part of said Act of 1865-1866, Chapter 40, supra, was applicable to the facts of that case; so the necessary conclusion is that even if legitimacy in Louisiana had been established, still there would be no right of inheritance by a direct descendant because the parents *had never lived together in the State of Tennessee.*

Then, as stated in the majority opinion, the Court of Civil Appeals in *Davidson v. Jennings,* 1917, 8 Tenn. Civ. App. 355, reiterated the holding that the right of inheritance did not extend beyond the lineal descendants of parents who had lived together as husband and wife in Tennessee.

It was in the light of this history as expressed in the foregoing and in numerous other cases holding that even in the case of such persons living together as husband and wife *in this State* there was no inheritance among collaterals, that Chapter 14, Acts of 1919 was enacted.

The only case in which this latter Act has been construed is the case of *Wallace v. Berry,* 1927, 6 Tenn. App. 248. There the Court stated the question for decision as follows:

"Does the Act of 1919, Chapter 14, extend the right of collateral inheritance to the issue of slave marriages?"

Now keeping in mind that the Court was dealing with a slave marriage where the parties had *resided in Tennessee,* the Court used the following language:

"It is insisted that this Act is merely declaratory of the law already in force at the time of the passage of the Act; that it creates no new rule of inheritance. It is true that it does not affect the rule that an illegitimate person is incapable of inheriting, except from the mother. But we are of opinion that this conferred the right of inheritance upon persons of legitimate descent who are collateral kindred of deceased negroes; that if persons of color are descendants of free persons of color who were living together as husband and wife *in this state* while in the state of slavery, and declared by section 5, Chapter 40 of the Acts of 1865-66 (Shann. Code, sections 4179 and 4189) to be man and wife they are entitled to inherit the property of their collateral relatives dying intestate to whom they are next of kin.

"The Act of 1919 does not limit the right of collateral inheritance to persons who are not the same issue of slave marriages. It extends this right to the kindred of any deceased negro just as under our laws it is given to the kindred of white persons, provided such kindred are of legitimate descent. Negroes not born in slavery nor the issue of slave marriages have had the same rights of inheritance as white persons ever since they became citizens. The Act of 1919 is so comprehensive that it includes all those of legitimate birth who are collateral kindred of a deceased negro. To hold otherwise would be to fail to give a literal interpretation to the Act. It was manifestly intended as an enlargement, by amendment, of the provisions of the said section 5 of Chapter 40 of the Acts of 1865-66, which is as follows:' '' (See Act quoted hereinabove.)

Now, reference to the majority opinion will disclose that it omits the first paragraph which is quoted imme-

diately hereinabove and which contains the specific decision of the Court on the factual situation involved, and only quotes a part of the second paragraph which is general and omits the last sentence of same, which is a specific statement that can only mean that the Act of 1865-66 was enlarged by the Act of 1919 to include collateral kin of slave marriages where the couple have resided in Tennessee.

The following year Judge DeWitt, who wrote the opinion in the *Wallace v. Berry* cause, had before him a later case of *Rhea v. Redus,* 1928, 7 Tenn. App. 478, in which he made no reference to the Act of 1919, and in which he denied the right of inheritance to the issue of a slave marriage in another State in the following language:

"In as much as Malinda Vaughan was the issue of a slave marriage in another State, her parent could not inherit from her under section 4178-a1 of Shannon's Ann. Code, for the reason that this section does not apply to slaves living in other States, being restricted to slaves who had been living together within this State as husband and wife. *Napier v. Church,* 132 Tenn. 111, 177 S.W. 56; *Cole v. Taylor,* 132 Tenn. 92, 177 S.W. 61."

While no petition for *certiorari* was filed in that case, certainly Judge Faw, Judge DeWitt and Judge Crownover did not overlook the Act of 1919, which they had dealt with just one year before, supra; that is very significant.

Neither the Act of 1919, nor any other Act up to the date of the death of Cornelius Walker contains the slightest suggestion of any intention to change the long-

established policy of Tennessee so as to give the right of inheritance to direct descendants of slave marriages of other States *which couples had not resided together as husband and wife in Tennessee.* It is, therefore, difficult to understand why such right of inheritance would be conferred on the collateral kin of such direct descendants who themselves had not inheritable blood. In fact, to so hold seems to me to produce an unreasonable and absurd result that was not intended by the Legislature, as disclosed by the foregoing legislative Acts and judicial opinions.

The majority opinion cites *Smith v. Mitchell,* 185 Tenn. 57, 202 S.W.2d 979, which I agree is a very able opinion by Chief Justice Neil and that the case was correctly decided, but in the final analysis it is simply an application of the principles stated in *Finley v. Brown* 122 Tenn. 316, 123 S.W. 359, 25 L.R.A., N.S., 1285, which is cited the opinion of Chief Justice Neil, to the effect that inheritance is governed by the *lex rei sitae;* but legitimacy is to be ascertained by *lex domicilii.*

However, the opinion uses these very significant expressions. On page 65 of 185 Tenn., on page 982 of 202 S.W. 2d it is said:

"The effect of our holding in *Finley v. Brown, supra,* (122 Tenn. 316, 123 S.W. 363) is that children who are legitimate in one state are legitimate everywhere, with this important qualification, 'States acting by comity will not permit a statute of a foreign state to extend any further than a local statute upon the same subject, or to confer any other rights; thus pursuing the principle that the *lex loci rei sitae* must control in the disposition of real estate.' "

Then on page 66 of 185 Tenn., on page 983 of 202 S.W.2d it is said:

"We think the effect of the Court's decision in these cases is that if a child is adopted or legitimated in a foreign state it can inherit from the parent in Tennessee provided the law of the foreign state is not inconsistent with, or opposed to, the policy of our own state. In other words, if a child is capable of inheriting in the foreign state, he, being legitimated by marriage of the parents and by force of law, is thereby legitimated in Tennessee, and is capable of inheriting lands lying in this state. But the rights acquired under foreign adoption or legitimation will not be enlarged so as to confer rights of inheritance in this state contrary to our own statute of descent."

This is reiterated on page 68, first paragraph, of 185 Tenn., on page 984 of 202 S.W.2d where it is said:

"They could only inherit, however, as provided by the statutes of descent in this state."

Now the majority opinion, at page 222 of 299 S.W.2d says:

"A bastard under the laws of this State who is legitimatized by the laws of another State is recognized and treated as legitimate so far as inheriting property in this State. Why should we make any difference in the issue of slave marriages who are legitimated by the foreign State and another?"

The answer to that question simply is that there is no dispute that Cornelius Walker, having been legitimated under the laws of Mississippi, is legitimated under the laws of Tennessee and naturally, if the law in Tennessee

permitted it, he would have been entitled to inherit and, likewise, so would the collateral, if legitimated, of Cornelius Walker or his parents. But the fact is there was not in existence during the life of Cornelius any statute in this State which permitted direct descendants of slave couples who had never lived together as husband and wife in this State, to inherit, even though their marriage was legitimated under the laws of the State of their residence.

Hence, the result of the construction placed upon the Act of 1919 by the majority opinion is to confer a right of inheritance upon collateral descendants of such foreign slave couples who have never resided in Tennessee, while the same privilege is denied to the direct descendants. Such a view is contrary to the laws of inheritance of this and every other State and to the laws of nature and is, therefore, an absurd result never intended by our Legislature.

Moreover, the statement of the majority opinion on page 222 of 299 S.W.2d, supra, if carried to its logical conclusion, would mean that this Court has now changed the law so as to permit direct descendants of such persons to inherit. If so, that is Simon pure legislation by the Court effecting a repeal of the Act of 1865-66.

Accordingly, I am of opinion that Cornelius Walker left no heirs capable of inheriting his real estate and, therefore, the same was inherited by his widow under T.C.A. sec. 31-103, and that Edward Evans as her devisee is entitled to the property.