LIBBIE SCALES, et al., v. CALLIE JAMES, et al.

Middle Section.    December 21, 1928.

Petition for Certiorari denied by Supreme Court, March 16, 1929.

B. A. Butler, of Nashville, for appellants, Callie James, et al.

W. C. Cherry and W. C. Davidson, of Nashville, for appellees, Libbie Scales, et al.

CROWNOVER, J. The motion to strike from the files the supplemental record in the case of Mary Winchester, et al. v. Callie James, et al., filed in this cause on June 14, 1928, is sustained because none of that record was filed or read on the trial of this cause; but the motion to affirm the decree of the Chancellor in this cause because the bill of exceptions failed to show that it contained all the evidence, is overruled, because it is no longer necessary to preserve by a bill of exceptions the evidence, depositions or documents excluded by the Chancellor in chancery cases tried on depositions and documentary evidence, where the action of the court on the parts or the whole documents, depositions or exhibits thereto, or other papers is duly noted thereon and authenticated by the Chancellor. See Acts 1905, Chapter 49, Shannon's New Code, sec. 4836a1 and 2; Gibson's Suits in Chancery, revised edition, section 538.

This is an ejectment suit filed by complainants Libbie Scales and her husband Tom Scales, and Mary Winchester to recover a house and lot in Nashville inherited from Charity Winstead, to enjoin the prosecution of a forcible entry and detainer suit in the circuit court, to have removed defendants' claim as a cloud from the title, and to be restored to the possession of the property. The defendants Callie James and her daughter, Fannie Waters, answered and denied complainants' title and relied on a superior legal title to said property. They admitted that Charity Winstead had purchased said property about the year 1895, that she and her husband held the adverse possession of it until her death in 1901, that her husband, Felix Winstead, then held the adverse possession of said property until his death in 1915, and that he devised it to these defendants, who were his niece and her daughter, and that they remained in possession until dispossessed by complainants in 1917. The defendants pleaded seven years adverse possession by Felix Winstead and themselves, and that complainants forcibly entered and took possession in 1917, and that defendants had brought a forcible entry and detainer action before a Justice of the Peace, which action had been appealed to the circuit court, where complainants had been forced to confess judgment in order to obtain an injunction in a prior suit in the chancery court, which suit had been dismissed for want of prosecution, hence the defendants pleaded said judgment of the circuit court in the forcible entry and detainer case as res adjudicata.

The cause was, by consent of the parties, referred to the Master, who was ordered to, "from the proof on file," report:

(1) From whom Charity Winstead purchased the property, and whether she went into the actual possession claiming title to same, and remained in possession until her death.

(2) When Charity Winstead died and the names of her heirs at law.

(3) Whether her heirs at law had held the adverse possession of the property until the filing of the bill in this cause.

(4) Did Felix Winstead in the lifetime of Charity Winstead, claim title to this property and had he been in the adverse possession since her death?

The Master reported:

(1) That Charity Winstead purchased the property on May 17, 1895, from Henry Smith and others and that she never lived on the property but rented it out until her death in 1901.

(2) That Charity Winstead died in 1901, leaving no descendants, and her heirs at law were two sisters, Mary Winchester and Sandietta Winchester, the latter of whom died in 1906, leaving a daughter, complainant Libbie Scales, as her only heir at law.

(3) That her heirs at law did not hold the adverse possession of said property until 1917 when Libbie Scales and her husband went into possession and erected a dwelling on said lot and remained in possession until in 1919 when defendants brought a forcible entry and detainer suit, in which action a receiver was appointed to rent out the property and he rented it to complainant Libbie Scales and her husband for $5 per month until 1925, when complainants' former suit in this court was dismissed for want of prosecution, at which time the circuit court awarded to defendants a writ of possession in the detainer suit and they were dispossessed.

(4) Felix Winstead, the husband of Charity Winstead, never had or claimed adverse possession of this property except for a short time when he began the erection of a dwelling on the lot, but he abandoned the dwelling after erecting a part of the framework. And the fences had decayed and fallen down, hence there was no enclosure or improvements on said lot, and that he did not have adverse possession of the property.

Defendants' exceptions to the report were overruled and this report was confirmed by the Chancellor, who decreed that the title to said property was in complainant Libbie Scales, who had purchased Mary Winchester's interest, and that defendants had no title or interest in the same, and that Libbie Scales recover said property and awarded her a writ of possession upon application

therefore. He declared that the will of Felix Winstead was a cloud on Libbie Scales' title and as such was removed.

The defendants' petition for a rehearing was overruled, and they have appealed and assigned errors, which are in substance that the Chancellor erred:

. (1) In decreeing that complainants had the legal title and were entitled to possession and to a writ of possession for said property.

(2) In holding that defendants had no title or interest in the property under the will of Felix Winstead, and in declaring it to be a cloud on complainants' title.

(3) In decreeing that the forcible entry and detainer judgment did not settle the rights of the parties and was not res adjudicata.

(4) In suppressing the depositions of Callie James and Fannie Waters, witnesses for the defendants.

The facts necessary to be stated are that Charity Winstead purchased the property from Henry Smith and others in 1895, and went into possession and rented out said property continuously until her death in 1901. She died intestate leaving her husband Felix Winstead and her two sisters, Mary Winchester and Sandietta Winchester Dozier, as her only heirs at law, the latter of whom died in 1906 leaving complainant Libbie Scales as her only heir at law. Charity Winstead had no children by her husband Felix Winstead.

After the death of Charity Winstead in 1901 the enclosures and the house on said property rotted and fell down and no one took or held possession of said property until 1917, when complainants Libbie Scales and her husband took possession and erected a dwelling on said lot and remained in possession until 1919 when the defendants brought a forcible entry and detainer action and had a receiver appointed by the court, who rented the property to complainants until 1925, when complainants prior suit for an injunction was dismissed in this court for want of prosecution, and they were dispossessed under a writ of possession issued from the circuit court in the detainer case; but afterwards on April 4, 1925, the present bill was filed for the purposes hereinabove set out.

Felix Winstead never held adverse possession of this property and laid no claim to it other than to attempt to devise it to the defendants who were his niece and her daughter.

After a careful examination of the record and the authorities we are of the opinion that none of the assignments of error are well made.

The first and second assignments are not well made because complainants have the legal title and were entitled to possession. The defendants had no title and derived none from the will of Felix

Winstead; hence the court was correct in declaring it to be a cloud upon complainants' title and in ordering it to be removed as such.

Under the first assignment of error appellants raised the proposition that complainants have not shown that they had the legal title to said property, and it is insisted that they must either deraign their title from the state or must have held seven years adverse possession under a color of title, or twenty years actual adverse possession without color of title, none of which was shown.

There is no doubt that in order to maintain an ejectment bill the complainant must show title by deraignment from the State or from a common source or by the requisite adverse possession under color of title and the complainant cannot recover without proof of a legal title. See Hubbard v. Godfrey, 100 Tenn., 150, 47 S. W., 81; Clay v. Sloan. 104 Tenn., 401, 58 S. W., 229.

This raises a serious proposition, and one not free from difficulty, but we are of opinion that under the pleadings and evidence in this case the parties are attempting to deraign title from a common source. The defendants admit in their answer that Charity Winstead purchased the property from Henry Smith and wife and took a deed to the same about the year 1895, but the deed was not recorded until after the death of Charity and Felix Winstead. They further allege in their answer that "Charity Winstead and her husband Felix Winstead occupied the property, claiming under the deed aforesaid up to the death of said Charity Winstead in the year 1901, and after her death Felix Winstead continued to occupy the property, claiming it openly and notoriously and adversely to the whole world up until his death in 1915, and your respondents have been claiming same under the will of Felix Winstead ever since," etc. From this admission it will be seen that the defendants are claiming as devisees under the will of Felix Winstead, who claimed title by adverse possession under the deed from Henry Smith to Charity Winstead. Where it appears that a husband, as such claimed the real estate of which his wife died seized, and conveyed it by deed or will purporting to convey an estate in fee, it will be presumed, in the absence of anything to the contrary that he claimed to have inherited said property from his wife. It will be presumed, nothing to the contrary appearing, that the grantor of defendant, in this case the testator, claimed by inheritance from his wife, under the statute, Shannon's Code, sec. 4165, and that, therefore, as complainants' claimed from a common source, they were not required to deraign title from the State. See Carver v. Maxwell, 110 Tenn., 75, 71 S. W., 752, which is a case very much in point. The Supreme Court in that case said: "She (the widow) could not only claim dower and homestead, but, if there were no legal heirs capable of inheriting the land she could claim as widow,

the whole estate. Shannon's Code, sec. 4165. Where it is shown as it is shown in the findings of the court of chancery appeals, that the widow claimed as widow. and that she purported to convey an estate in fee, the presumption would be in the absence of anything to the contrary, that she was claiming under the section of the Code just referred to. This presumption is strengthened in the present case by the fact that it does not appear that any children were born of the marriage of the said Henry and Louisa, and by the further fact that the defenses, as appears from the findings of the court of chancery appeals, were based upon a denial of the fact that Henry Johnson left any heirs at law; the legitimacy of the complainants asserting title being denied.''

In the instant case it was admitted in the answer that Felix Winstead and his wife went into possession under the deed and held the adverse possession until her death in 1901, when he remained in possession and later devised the property to these defendants: hence it is apparent that he claimed the land as the husband of Charity Winstead, and the presumption is that he was claiming under the section of the Code just referred to. The proof shows that they remained in the possession of the property as long as Charity Winstead lived but that after her death he let the fences and improvements fall down and decay and did not hold any adverse possession of the property during the remainder of his life, but under the apprehension that he owned the property he attempted to devise the fee simple title to this property to these defendants. ''The reason underlying the rule forbidding either party in eject-ment to deny the common source of title, is that one cannot dispute the title by which he claims.'' Wilson v. Wilson, 137 Tenn., 597, 195 S. W., 173; hence, under the present state of the pleading the defendants having claimed title through and under Charity Winstead they are forbidden to deny her title.

There is nothing in the third assignment of error that a judgment in a forcible entry and detainer case is res adjudicata in an eject-ment suit. One is a controversy about possession and the other is a controversy about the title. The judgment in a forcible entry and detainer case is not res adjudicata in an ejectment suit. See Casey v. McFalls, 3 Sneed, 115, 118; 34 C. J., 960, sec. 1364; James L. Taylor v. Robert Beaty, Fentress Equity, 8 Tenn. App., 310.

We are of the opinion that the Chancellor erred in suppressing the depositions of Callie James and Fannie Waters, witnesses for the defendants, because these depositions were taken before the Clerk and Master made his report and before the Chancellor made his final decree, hence these depositions should have been considered by the court.

We think that a reference to the Master on the matters in issue was not proper.

A reference is usually made after a preliminary hearing on the main questions in the controversy, and after a decree settling those questions; the reference in such cases being mainly in furtherance of the decree and being based on the adjudication made, and the principles declared. See Gibson's Suits in Chancery, revised edition, sec. 599. Where questions arise incidentally as to the title of or encumbrances on property about to be purchased or sold, under the orders of the court, it is proper to refer such matters to the Master; but if the suit is brought expressly to recover property on the strength of complainant's title, the court must then determine the title and the question of title in such cases is not a proper matter to be referred to the Master. See Gibson's Suits in Chancery, revised edition, sec. 595; Woodson v. Smith, 1 Head, 277.

But where a party consents to a reference, as in this case, it amounts to a tacit admission that the action is a referable one and is a submission to the jurisdiction of the court; See 17 Ency. Plead. & Practice, 990; and a party must object to the order of reference if it is not proper, at the time it is made. If he does not, he waives any irregularities, and if he agrees to the order of reference then he is bound by the reference. 17 Ency. Plead. & Prac., 989, 990. If he asks or consents that the trial court proceed in a certain manner he will not be allowed to complain of such action. 2 R. C. L., 238, sec. 198.

All the parties having agreed to this reference, they cannot raise any objection as to the irregularities, and as the Chancellor has passed on all the issues the irregularity has been cured.

Ordinarily the Master must consider not only all of the depositions and documents on file in the case when the order of reference was made, but must also consider all depositions and documentary evidence taken and filed by any of the parties before he begins to make up his report. See Gibson's Suits in Chancery, revised edition, sec. 609, sub-sec. 1. But in this instance the parties agreed that the reference should be made to the Master, "who will from the proof on file, report" on the reference. Hence the defendants are responsible for the Master not considering the depositions and cannot now complain as to his action; but we are of the opinion that it was the duty of the Chancellor to consider these depositions any way before rendering his decree and that it was error for him not to do so. However, we have carefully read over these depositions and we are of the opinion that they do not in any way change the result, and that the complainants have sustained the preponderance of the evidence on all the propositions. Hence this assignment of error becomes immaterial.

It results that the determinative assignments of error must be overruled and the decree of the Chancellor affirmed. A decree will be entered holding that complainant Libbie Scales has the legal title to the house and lot "number 54 of the D. T. McGavock's Plan of 98 lots in North Nashville" and that the defendants have no title or interest in the same, and a writ of possession will be awarded to put her into possession of said property upon her application therefor, and the claim of title of the defendants under the will of Felix Winstead is hereby declared to be a cloud on Libbie Scales' title and as such is removed. The injunction granted in this cause enjoining the further prosecution of the forcible entry and detainer suit in the circuit court is made perpetual. The costs of the cause, including the cost of the appeal is decreed against the defendants, for which execution may issue.

## OPINION ON PETITION TO REHEAR.

Appellant has filed a petition for a rehearing on the ground that this court was in error in holding that the complainants and the defendants deraigned title from a common source. It was insisted that the burden was on the complainants to show that they had title, and they had failed.

The petition raises nothing new, and we thoroughly went over these propositions in our original opinion, in which we held that this case was controlled by the principles laid down in the case of Carver v. Maxwell, 110 Tenn., 75, 71 S. W., 752. The complainants alleged that they were the heirs of Charity Winstead. The defendants denied that the complainants were the owners by inheritance from Charity Winstead or otherwise, and denied all other allegations of the bill. The defendants in their answers to the bill and amended bill admitted that Charity Winstead purchased the property, took a deed for the same, and that she and her husband occupied the property, claiming under the deed aforesaid up to the death of Charity Winstead in the year 1901, and after her death Felix Winstead continued to occupy the property claiming it adversely to the world until his death in 1915. He attempted to devise this property in fee simple to the defendants; hence we think that there can be no doubt that he claimed this property as the husband of his wife under Shannon's Code, section 4165. There is nothing to the contrary in this record and the case is governed by the principles laid down in the case of Carver v. Maxwell, supra.

It results that the petition for a rehearing must be denied.

## OPINION ON MOTION FOR THE ISSUANCE OF A WRIT OF POSSESSION.

This case is again before us on motion by complainants for the issuance of a writ of possession, and after an investigation of the record we are of the opinion that the motion must be overruled.

The case was originally decided by us and the opinion filed on December 21, 1928. A petition for a rehearing was filed in January and denied by us on January 18, 1929. Now complainants, on February 12, 1929, insist that as the original decree was entered in this court on December 21, 1928, the thirty days have expired and that they are entitled to a writ of possession on the authority of Patterson v. Bank, 101 Tenn., 511, 48 S. W., 225; but upon an investigation of the statute, Act of 1925, chapter 100, sections 13 and 14, we are of the opinion that the thirty days mentioned in section 13 is from the final decree, as that section provides that the judgment of the Court of Appeals "unless superseded, reversed, or modified by the Supreme Court, shall, after expiration of thirty days from the final decree as hereafter defined, be executed by all necessary and proper writs."

Section 14 outlines the practice with reference to removal of causes from the Court of Appeals to the Supreme Court by petition for certiorari, and provides that the Supreme Court or one of the judges may order a writ of supersedeas in aid of the certiorari upon such terms and bond as such court or judge may prescribe. The Act then continues, "Petitions for certiorari to require the removal of any case from the Court of Appeals to the Supreme Court for review, shall be filed in the Supreme Court within forty-five days after final decree in the Court of Appeals, including decree upon any application to that court for a rehearing or for different or additional findings."

The Supreme Court in the case of Red Top Cab Company v. Garside, 155 Tenn., 614, 298 S. W., 263, after reviewing these two sections of said statute, held that the judgment creditor was entitled to execution thirty days after the entry of the judgment of the Court of Appeals, and that the filing of the petition for certiorari in the Supreme Court did not stay the execution of the judgment unless the petitioner also applied for and obtained a writ of supersedeas. In other words, it held that the bare filing of the petition for certiorari did not even remove the case to the Supreme Court.

Hence we are of the opinion that the decree or judgment may not be executed until the expiration of thirty days from the final decree upon petition for rehearing. See Russell v. Russell, 3 Tenn. Apps., 236.

We are of the opinion that the case of Patterson v. Bank, has no application to this case, as the issuance of execution is governed

316

by the statute. It results that the motion for the issuance of a writ of possession at this time must be overruled.

Faw, P. J., and DeWitt, J., concur.