## JONES *v.* JONES.

ERROR TO THE SUPREME COURT OF THE STATE OF
TENNESSEE.

No. 339. Argued April 30, 1914.—Decided June 22, 1914.

The statute of Tennessee of 1865, c. 40, § 8, declaring that children of
slave marriages should be legitimately entitled to inherit, as it has
been construed by the highest court of that State as not extending
the right of inheritance beyond lineal descendants of the parents,
is not unconstitutional under the equal protection clause of the Four-
teenth Amendment.

Inheritance is not a natural or absolute right but the creation of statute
and is governed by the *lex rei sitæ.*

The rights of one claiming real property as heir, through an alien, a
bastard or a slave, must be determined by the local law. *Blythe* v.
*Hinckley,* 180 U. S. 333.

While a colored freedman in Tennessee could dispose of property ac-
quired during freedom by deed or will and it descended to his issue,
if any, if he died intestate, if no issue survived, it passed under the
terms of the act of 1865 to his widow, if she survived, and not to his
collateral relatives.

THE facts, which involve the construction and consti-
tutionality under the Fourteenth Amendment of certain
provisions of the laws of Tennessee in regard to the descent
of real property, are stated in the opinion.

*Mr. W. H. Harrelson,* with whom *Mr. W. P. Metcalf*
was on the brief, for plaintiff in error.

*Mr. B. F. Booth* for defendants in error.

MR. JUSTICE LURTON delivered the opinion of the court.

This is a question of collateral descent arising under
the Tennessee statutes.

One John Jones, a colored freedman, died in 1889, the owner of a tract of eighty-seven acres of land lying in Shelby County, Tennessee, upon which he and his wife had lived for many years.  He died intestate and without issue.  The title to the land was claimed by his widow, the defendant in error, Marguerite Jones, who has since the death of John Jones inter-married with the other defendant in error, Albert Jones.  Her claim was rested upon § 4165, Shannon's Compilation of Tennessee laws, which provides that if one die intestate, "leaving no heirs at law capable of inheriting the real estate, it shall be inherited by the husband or wife in fee simple."  The plaintiff in error, Will Jones, contested the claim of the widow, contending that the land passed to the surviving brothers and sisters of the intestate, under whom, through quit-claim deeds, he claimed the title.  The widow's bill was for the purpose of cancelling these deeds as clouds upon her title.  The Tennessee court sustained her bill and adjudged that the intestate having died without issue and without heirs at law capable of inheriting, his real estate passed to his widow under § 4165, *supra*.

The deeds denounced as clouds upon the widow's title were attacked upon a number of grounds, among them fraud in their procuration.  The decree ordering their cancellation was apparently based only upon the ground that their makers, assuming them to be legitimate full brothers and sisters of the intestate John Jones, were sons and daughters of a born slave and themselves born slaves, and as such were not his heirs within the meaning of the Tennessee statutes of descent.

There is a Tennessee statute of descent which provides that the land of an intestate shall pass to his brothers and sisters in case the owner die without issue, and the contention is that if this statute preferring the brothers and sisters of an intestate dying without issue over the husband or widow be construed as applying only to brothers and

sisters born free, it discriminates against those born slaves and thereby violates that equal protection of the law guaranteed by the Fourteenth Amendment to the Constitution.

This provision of the Tennessee canon of descent by which the brothers and sisters of an intestate dying without issue take his real estate is as old as the State and comes from the common law. It does not distinguish in terms between brothers and sisters born free and those born slaves. Neither does it distinguish between those who are born bastards and those born in wedlock, and those who are aliens and those who are not. Nevertheless, neither a bastard nor an alien has inheritable blood, nor are they capable of inheriting as heirs unless by aid of some statute: 2 Kent's Comm. * p. 211; 2 Blackstone's Commentaries, * p. 249; *Levy* y. *McCartee*, 6 Peters, 102. The civil status of slaves in Tennessee, as well as in other States in which slavery existed, was such as to disable them from inheriting or transmitting property by descent. Thus it was said, "They cannot take property by descent or purchase, and all they find and all they hold, belongs to the master. They cannot make lawful contracts, and they are deprived of civil rights. They are assets in the hands of executors, for the payment of debts." 2 Kent's Commentaries, 11th ed., 278, * p. 253; *Jackson* v. *Lervey*, 5 Cowen (New York), 397. Slaves, therefore, were not within the meaning and effect of the statutes of descent, and no descent from or through a slave was possible except as provided by some special statute. The rule was the same as to aliens and illegitimates.

After the emancipation of the slaves of the South the statutes of inheritance were extended in many States so as to confer upon the children of parents born in slavery the right to inherit from their parents. But these enlargements of the canon of descent extended only to lineal descendants and did not embrace collaterals. The Ten-

nessee statute, which .was claimed in the court below to be
broad enough to embrace collateral relatives, is that of
1865–6, c. 40, § 5, carried into Shannon's Compilation as
§ 4179.   That act declared that slaves who within the
State had lived together as man and wife should be re-
garded as lawfully married, and that the children of such
slave marriages should be "legitimately entitled to an
inheritance in any property heretofore acquired, or that
may hereafter be acquired by said parents, to as full an
extent as the children of white citizens are entitled by
the laws of this State."   But this statute has been more
than once construed as not extending the right of inherit-
ance beyond the lineal descendants of the parents: *Shep-
erd* v. *Carlin,* 99 Tennessee, 64; *Carver* v. *Maxwell,* 110
Tennessee, 75.   In *Sheperd* v. *Carlin, supra,* the question
here presented was decided.   Agnes Lee, a colored woman,
born in slavery, died intestate and without issue.   Her
land was claimed by her surviving husband under § 4165,
Shannon's Compilation, heretofore referred to, and by
her niece as her only collateral relative.   The court held
that the right to inherit the real estate of an intestate
born in slavery had been extended only in favor of lineal
descendants and that collaterals possessed no inheritable
blood.   To the same effect are many cases, among them:
*Tucker* v. *Bellamy,* 98 No. Car. 31; *Jones* v. *Hoggard,* 108
No. Car. 178; *Williams* v. *Kimball,* 35 Florida, 49; *S. C.,*
16 So. Rep. 783.

Inheritance is governed by the *lex rei sitœ.*   It is not a
natural or absolute right, but the creation of statute law.
If one claim the right to succeed to the real property of
another as heir and his right is denied because he must
trace his pedigree or title to or through an alien, a bastard
or a slave, the question is one to be determined by the
local law.   *Cope* v. *Cope,* 137 U. S. 682.   *Levy* v. *McCartee,*
*supra.*   *Blythe* v. *Hinckley,* 180 U. S. 333.   In *Levy* v.
*McCartee, supra,* the question was one of inheritance, the

plaintiff tracing his pedigree through an alien ancestor. After first deciding that a question of inheritance to land in New York, was one to be determined by the law of that State, the court held; first, that an alien had no inheritable blood and could neither take land himself by descent, nor transmit it to others; second, that under the law of New York one citizen of the State could not inherit in the collateral line of another when he must make his pedigree or title through a deceased alien ancestor.

It is true that the land of the intestate John Jones was acquired when he was a freedman. Under the law of the State when he acquired it, he had the right to dispose of it by deed or will. If he died intestate leaving issue, it descended to such issue. But if he left no such descendants, it passed, by the express terms of the statute, to his widow.

We are unable to see in the Tennessee Statute of Descent any such denial of the equal protection of the law as is prohibited by the Fourteenth Amendment.

*The decree is accordingly affirmed.*