# DAVID ANDERSON et al. v. COOPER ANDERSON et al.—372 S. W. (2d) 452.

Western Section at Jackson. September 28, 1962.

Rehearing Denied by Supreme Court May 10, 1963.

Certiorari Denied by Supreme Court April 3, 1963.

242

John Van Den Bosch, Jr., W. E. Leech, Jackson, for defendants-appellants Cooper Anderson, and W. E. Leech.

Victor F. Schneider, Watt H. Moore, Jackson for intervening petitioners-appellees Alma Smith Isbell et al.

CARNEY, J. This suit involves the title to 100 acres of farm land located in the 5th District of Madison County, Tennessee, just north of the city limits of Jackson, Tennessee. The land was owned by one Sam Anderson, colored, at his death in 1924 intestate. Sam Anderson was born about 1841 in slavery on or near the very farm which is in litigation. The two determinative questions to be decided by this Court on this appeal are: (1) Whether Sam Anderson was legitimate or illegitimate, and (2) whether his three children, Robert, Sarah and Harriet Anderson, were legitimate or illegitimate.

Sam Anderson entered into a civil marriage ceremony with Eliza Hunt on November 18, 1893, and this marriage continued to the date of his death on May 19, 1924. Sam Anderson purchased the land in litigation on November 1, 1904. Sam and his wife, Eliza, had no children.

Eliza Hunt Anderson lived on the land, collected the rents and paid the taxes continuously from 1924 until her death on May 4, 1950. Apparently administration was never had upon the estate of Sam Anderson and no

homestead and dower was ever laid off or set apart to Eliza.

The present litigation is between the collateral heirs of Eliza Hunt Anderson represented by Alma Smith Isbell and others, appellees in the present cause, and the defendants-appellants, Cooper Anderson and W. E. Leech. Mr. Leech is an attorney practicing at the Madison County Bar. Cooper Anderson and W. E. Leech claim title to the real estate as grantees of the grandchildren of Sam Anderson, namely Eva Floyd and Nora Porter Mathis.

Eva Floyd is a daughter of Sarah Anderson Gill, a daughter of Sam Anderson, who died in 1921. Nora Porter Mathis is a daughter of Robert Anderson, a son of Sam Anderson, who died about 1889. Sam Anderson had another daughter, Harriet Anderson, who died about 1924 leaving no children or grandchildren surviving her. Robert Anderson, Sarah Anderson and Harriet Anderson are all three children of Sam Anderson by one Saludie Lee. The Chancellor found that Sam Anderson and Saludie Lee were never married, by slave marriage or otherwise, and that Robert, Sarah and Harriet were illegitimate.

The deeds from Eva Floyd and Nora Porter Mathis, as the alleged sole heirs of Sam Anderson, conveying the 100 acres of land to Cooper Anderson were executed in 1939. In 1942 the defendant, Cooper Anderson, conveyed an undivided one-half interest in 95 acres to W. E. Leech. The defendant, Cooper Anderson, shortly after he received the deeds to the land, notified Eliza Hunt Anderson, the widow of Sam Anderson, of his purchase and explained to her that she would be entitled to keep

the land as long as she lived. On this occasion Eliza Hunt Anderson told Cooper Anderson that Sam Anderson had never been married to Saludie Lee and that Robert, Sarah and Harriet Anderson were outside children of Sam Anderson.

Eliza Hunt Anderson never made any claim to title to the land except the right to live there throughout her lifetime. She left a will in which she bequeathed personal property but made no mention of owning any real estate. The defendants, Cooper Anderson and W. E. Leech, have been in possession of the land continuously since May 4, 1950, the date of death of Eliza Anderson. They have collected all the rentals therefrom.

After the death of Eliza Hunt Anderson on May 4, 1950, and on May 29, 1950, David Anderson, et al. as collateral heirs of Sam Anderson filed the original bill in this cause seeking to establish title to the 100 acres owned by Sam Anderson at his death. The original bill averred that the three children born to Sam Anderson and Saludie Lee through whom the defendants, Cooper Anderson and W. E. Leech, claim title were illegitimate and therefore Cooper Anderson and W. E. Leech held invalid titles to the real estate. Some proof was taken shortly after filing the original bill.

The original complainants, David Anderson, et al., are children and grandchildren of brothers and sisters of Sam Anderson.

On March 18, 1957, Alma Smith Isbell, appellee herein, filed an intervening petition averring that she was a great-niece of Eliza Hunt Anderson and that Eliza Hunt Anderson owned the fee simple title to the land in ques-

tion at her death as the surviving widow of Sam Anderson because Sam Anderson was illegitimate and left no legitimate children or grandchildren surviving him legally entitled to inherit the property. T.C.A. Section 31-105. She averred that Sam Anderson was illegitimate because he was born as a slave and that his three children, Robert, Sarah and Harriet Anderson, were illegitimate because Sam was never married to their mother, Saludie Lee. The intervening petition further set out names and relations of all the other collateral heirs of Eliza Hunt Anderson and the petitioner, Alma Smith Isbell, stated that she filed the petition on behalf of herself and all the other collateral heirs.

On June 1, 1957, the defendant, Cooper Anderson, filed his general answer to the intervening petition of Alma Smith Isbell and denied her right to file petition on behalf of the other collateral heirs of Eliza Anderson and denied the right of any of them to recover.

On June 3, 1957, the defendant, W. E. Leech, filed a motion to dismiss the petition of Alma Smith Isbell for misjoinder of parties averring that Alma Smith Isbell was one of a group or class of persons and each member should be petitioner, complainant or defendant.

On November 6, 1959, the then Chancellor Dewitt Henderson, on motion of solicitor for the original complainants, collateral heirs of Sam Anderson, ruled that the original bill filed by the collateral heirs of Sam Anderson should be treated as a suit in ejectment. He held that the petition of Alma Smith Isbell was a good petition to intervene insofar as the interest of Alma Smith Isbell individually was concerned but that she was not entitled to file the petition in behalf of the other heirs of Eliza

Hunt Anderson insofar as the defendant, W. E. Leech, was concerned. He sustained her right to petition on behalf of the other heirs insofar as the defendant, Cooper Anderson, was concerned because Cooper Anderson waived his objection by filing a general answer.

On November 20, 1959, the defendant, W. E. Leech, filed his general answer to the intervening petition of Alma Smith Isbell. The solicitor for the original complainants, the Honorable Watt Moore, announced in open court that in his opinion the deceased Sam Anderson was illegitimate and that therefore his original complainants, the alleged collateral heirs of Sam Anderson, had no right to maintain their suit and that they were abandoning the same and that he was associating himself as counsel with the solicitor for the collateral heirs of Eliza Hunt Anderson.

After all the proof was in the cause was argued on November 15, 1960, before the Honorable Brooks McLemore, Chancellor, successor to Chancellor Dewitt Henderson, retired. Counsel for all parties stated and agreed in open court that it was their desire and request that all questions in the cause be ruled on by the Chancellor and that all motions previously ruled on by Chancellor Henderson be examined by the present Chancellor and affirmed, modified or reversed so that the entire matter could be passed on at one time.

Chancellor McLemore sustained a motion by Mr. Schneider, solicitor for the collateral heirs of Eliza Hunt Anderson, to take a pro confesso against the collateral heirs of Sam Anderson, the original complainants.

The Chancellor also found that the three children of Sam Anderson, namely, Robert Anderson, Harriet An-

derson and Sarah Anderson, were all illegitimate children of Sam Anderson by Saludie Lee; that they were never formally married and had never lived together as man and wife either before or after the emancipation of slaves in Tennessee. Further the Chancellor found that Sam Anderson having been born in slavery was illegitimate under the laws of Tennessee and that his collateral heirs were not entitled to inherit his property.

The Chancellor further found that since Sam Anderson died without leaving any surviving children that his widow, Eliza Hunt Anderson, inherited the land in question which he owned in fee simple at the time of his death; hence the collateral heirs of Eliza Anderson were adjudged to be the owners of the legal title to said property, and that the deeds of Eva Floyd and Nora Porter Mathis, grandchildren of Sam Anderson, to Cooper Anderson were illegal and void and conveyed no title to the defendant, Cooper Anderson.

The Chancellor found that the intervening petitioners, collateral heirs of Eliza Hunt Anderson, were entitled to the full fee simple title of the one-half of the land owned by the defendant, Cooper Anderson, but that only the intervening petitioner, Alma Smith Isbell, individually, was entitled to recover the possession of her fractional share of the other one-half undivided interest claimed by the defendant, W. E. Leech, by conveyance from Cooper Anderson. Upon a reference it was determined that this fractional interest amounted to $\frac{1}{102}$ of the one-half interest.

The defendants, Cooper Anderson and W. E. Leech, have appealed. The intervening petitioners have appealed from the action of the Chancellor in failing to

allow them to recover against W. E. Leech for one-half interest claimed by him and allowing only Alma Smith Isbell to recover the undivided $\frac{1}{102}$ interest. The original complainants, collateral heirs of Sam Anderson, have not appealed from the action of the lower court in awarding a decree pro confesso against them in favor of the intervening petitioners.

Thus it now appears that the present litigation is between the heirs of Eliza Hunt Anderson, widow of Sam Anderson, on the one hand and Cooper Anderson and W. E. Leech as the grantees of the grandchildren of Sam Anderson on the other.

There are three statutes which directly affect the rights of the respective parties to the lands in litigation. We quote them in full as follows:

T.C.A. 31-302. *"Children of slaves cohabiting as man and wife entitled to inherit.*—All persons of color who were living together as husband and wife in this state, prior to 1865, are declared to be man and wife, and their children legitimately entitled to an inheritance in any property of said parents, to as full an extent as the children of white citizens.

"31-303. *Collateral kindred inheriting.*—The collateral kindred of a deceased person of color shall inherit his estate, real and personal, as in case of the collateral kindred of a white person, and regardless of the date of the death of such person of color, provided, that the property has not passed to the state by escheat enforced, and, further, that no substantial right of another person in the property has intervened.

"31-105. *Illegitimate child—Who shall inherit estate.* —When an illegitimate child dies intestate without child or children, husband or wife, his real estate shall go to his mother, and if there be no mother living, then equally to his brothers and sisters by his mother, or descendants of such brothers and sisters."

The order of inheritance of real estate owned by a deceased illegitimate person under T.C.A. Section 31-105 has been determined as follows:

1. To the children of the illegitimate intestate, if any;

2. To the husband or wife of the illegitimate intestate, if there be no children;

3. To the mother of the illegitimate intestate, if there be no children, husband or wife;

4. To the brothers and sisters of the intestate by his mother;

5. To the descendants of the deceased brothers and sisters.

Webb v. Webb, 40 Tenn. 68.

His Honor the Chancellor held that since Sam Anderson was proven to have been born in slavery he was illegitimate and that the property owned by him on his death intestate in 1924 devolved under T.C.A. Section 31-105 quoted above.

Normally the land would have devolved upon the grandchildren of Sam Anderson because the children were dead. However, the Chancellor found further that the three children of Sam Anderson, namely Robert Anderson, Harriet Anderson and Sarah Anderson were

also illegitimate and incapable of taking under T.C.A. Section 31-105. Hence the Chancellor held that the title to the real estate devolved upon the widow of Sam Anderson, Eliza Hunt Anderson.

Eliza having died in 1950 His Honor the Chancellor held that the intervening petitioners, the collateral heirs of Eliza Hunt Anderson, were the lawful owners of the real estate in question. There is no question made as to the legitimacy of Eliza Hunt Anderson and the right of the intervening petitioners as her collateral heirs to inherit from her.

It is admitted that Sam Anderson was born in slavery to slave parents sometime about 1841. The records of the undertaker entered on the day of his death, May 19, 1924, show that Sam Anderson was born May 1, 1841, and that his father was listed as Mr. Jim Anderson and his mother's name was listed as Mrs. Annie Anderson. Apparently Sam Anderson spent his entire life on the farms in litigation or adjacent thereto, approximately five miles northwest of Jackson, Tennessee. He was a very substantial citizen in his community, active in the affairs of his church and a rather successful farmer. He was well-known in Jackson, Tennessee, as a peddler of watermelons and probably other fruits and vegetables.

His daughter, Sarah Anderson Gill, died in Madison County, Tennessee, on May 4, 1921. Her age was listed on the records of the undertaker at 52 years which would indicate that Sarah Anderson was born in 1869. The name of her father was listed as Sam Anderson and the name of her mother was Saludie Lyons.

The other daughter, Harriet Anderson, died April 25, 1924, shortly before the death of her father, Sam Ander-

son. According to the records of the undertaker she was 58 years of age having been born in Tennessee in 1866. The name of her father was listed as Sam Anderson and the name of her mother was given as Saludie Lyons.

Apparently the exact date of death of Robert Anderson is unknown but it is suggested that he died about 1889. The census records of 1880 taken as of June 1 show that Sam Anderson had living in his household his son, Robert Anderson, age 17; his daughter, Harriet Anderson, age not shown; Hardy Colyor, age not shown, listed as his father-in-law and Tom Dunningan, his relationship to Sam Anderson not shown. So apparently Robert Anderson was born in 1863. It is also admitted that his mother was also Saludie Lyons or Saludie Lee.

There is no evidence of any civil marriage ever being performed between Sam Anderson and Saludie Lee.

On March 9, 1872, a marriage license was issued in Madison County, Tennessee, for the marriage of Alfred Ridley and Saludie Lee. On December 13, 1886, a marriage license was issued by the County Court Clerk of Madison County for the marriage of George Lyons and Celudie Lea.

There is proof in the record that sometime around 1875 Sam Anderson was living as man and wife with one Millie Collier. This proof is corroborated by the census record of 1880 showing Frank ''Colyor'' living in the home of Sam Anderson as father-in-law. However, there is no proof of any marriage license ever having been issued for the marriage of Sam Anderson to Millie Collier.

On October 19, 1885, a license was issued by the Clerk of the County Court of Madison County for the marriage

of Sam Anderson to Lou Howlett. To this marriage was born one or two children, both of whom predeceased their father, Sam Anderson, without issue. On November 18, 1893, a license was issued by the Clerk of the County Court of Madison County for the marriage of Sam Anderson to Eliza Hunt which marriage continued until the death of Sam Anderson on May 19, 1924.

By appropriate assignments of error the appellants, Cooper Anderson and William E. Leech, insist that His Honor the Chancellor was in error in holding that Sam Anderson was illegitimate because he was born in slavery and in holding that the title to his real estate devolved under T.C.A. Section 31-105 to his widow, Eliza Hunt, in the absence of heirs of Sam Anderson legally entitled to take.

██ Of course, prior to the end of the Civil War and during slavery days in Tennessee slaves could not own property and could not inherit property. The slaves themselves were the property of their masters.

█ Slaves in Tennessee were emancipated by the ratification of an amendment to the constitution of the State of Tennessee on February 22, 1865. Gholson, Admr. v. Blackman, 44 Tenn. 580. Section 5 of Chapter 40 of the Public Acts of 1865 now codified as T.C.A. Section 31-302 quoted above was enacted for the purpose of legitimating slave marriages and the children of slave marriages and to give the children of such slave marriages the right to inherit property from their parents.

In the case of Andrews v. Page, 1871, 50 Tenn. 653, our Tennessee Supreme Court recognized the existence and limited legality of marriages between slaves. From the opinion of Judge Nelson we quote as follows:

"These cases, and other cases previously cited, establish beyond controversy, that there were circumstances under which the courts of this State recognized the relation of husband and wife, and the ties of consanguinity, as existing among slaves, as well as among free persons, and free persons of color; *and we hold, that a marriage between slaves, with the assent of their owners, whether contracted in common law form, or celebrated under the statute, always was a valid marriage in this State, and that the issue of such marriages were not illegitimates.* We do not hold that such marriages were followed by all the legal consequences, resulting from the marriage of white persons. From the very nature of the institution of slavery, they could be determined at the will of the owners and the laws of inheritance were not applicable to them, for the reason that slaves could not, in a legal sense, become the owners of property; but still this marriage relation, however restricted, might, and often did, become the foundation of legal and equitable rights of the highest importance."

The language of Judge Nelson in Andrews v. Page was subsequently approved by Justice Lurton, later a member of the Supreme Coprt of the United States, in the case of Brown v. Cheatham 91 Tenn. 97, 17 S.W. 1033.

However, from 1865 up until 1919 our Tennessee Courts uniformly construed Chapter 40 of the Public Acts of 1865, T.C.A. Section 31-302, as extending the right of inheritance only to the lineal or direct descendants of slave marriages. Shepherd v. Carlin, 99 Tenn. 64, 31 S.W. 340; Carver v. Maxwell, 110 Tenn. 75, 71 S.W. 752; Jones v. Jones, 234 U.S. 615, 619, 34 S.Ct. 937, 58

L.Ed. 1500, 58 Law Edit. 1500; Napier v. Church, 132 Tenn. 111, 177 S.W. 56.

The courts uniformly refused to allow the collateral heirs of children of slave marriages to inherit property from such children.

By Chapter 14 of the Public Acts of Tennessee of 1919 (T.C.A. Section 31-303) the right of collateral inheritance was extended to the issue of slave marriages.

In the case of Wallace v. Berry, 1927, 6 Tenn.App. 248, a negro, Sam Miller, had died testate naming the defendant, Margaret Wallace, an executrix and beneficiary under his will. The defendants-in-error, Lucy Berry, Lizzie Miller and Anderson Lewis Miller, as nieces and nephew of the testator filed petitions of contest. The executrix resisted on the grounds that the contestants were illegitimate because their parents were never legally married. The proof showed that Lucy Berry was the daughter of Ellen Turner and Harkless Miller and that Ellen and Harkless were married during the Civil War by their owner, Bill Williams, in the dining room of his home near Cowan in Franklin County; that Williams read to them from the Bible and had Ellen and Harkless join hands and pronounced them man and wife and that a sister of Ellen threw down a broom and had Ellen to step over it, a symbol of slave marriage used in those days. Harkless and Ellen were never married in a civil ceremony and Lucy Berry was born to them about 1876.

The court found that Lucy Berry was a legitimate daughter of Harkless and Ellen and entitled to contest the will of her uncle, Sam Miller. A half sister, the defendant-in-error, Lizzie Miller, daughter of Harkless by a woman named Mag Miller with whom Harkless Miller

lived during a portion of the time he was married to Ellen Turner was declared to be illegitimate and therefore not entitled to contest the will of her uncle, Sam Miller.

The other contestant, Anderson Lewis Miller, testified that his mother told him that she and his father, brother of Sam Miller, were married during slavery and that he was born during slavery of the slave marriage. The proof also showed that Sam Miller, the testator, always recognized Anderson Lewis Miller as his nephew. The court held Anderson Lewis Miller as legitimate and entitled to contest the will of his uncle, Sam Miller.

From the case of Wallace v. Berry, we quote as follows:

"It is insisted that this act is merely declaratory of the law already in force at the time of the passage of the act; that it creates no new rule of inheritance. It is true that it does not affect the rule that an illegitimate person is incapable of inheriting, except from the mother. But we are of the opinion that this act conferred the right of inheritance upon persons of legitimate descent who are collateral kindred of deceased negroes; that if persons of color are descendants of free persons of color who were living together as husband wife in this State while in a State of slavery, and declared by section 5, chapter 40 of the Acts of 1865-66 (Shann.Code, secs. 4179 and 4198) to be man and wife, they are entitled to inherit the property of their collateral relatives dying intestate and to whom they are next of kin.

"The Act of 1919 does not limit the right of collateral inheritance to persons who are not the issue

of slave marriages. It extends this right to the kindred of any deceased negro just as under our laws it is given to the kindred of white persons, provided such kindred are of legitimate descent. Negroes not born in slavery nor the issue of slave marriages have had the same rights of inheritance as white persons ever since they became citizens. The Act of 1919 is so comprehensive that it includes all negroes of legitimate birth who are collateral kindred of a deceased negro. To hold otherwise would be to fail to give a literal interpretation to the act. It was manifestly intended as an enlargement, by amendment of the provisions of the said section 5 of chapter 40 of the Acts of 1865-66, which is as follows:

" 'All free persons of color who were living together as husband and wife in this State while in a state of slavery, are hereby declared to be man and wife, and their children legitimately entitled to an inheritance in any property heretofore acquired, or that may hereafter be acquired, by said parents, to as full an extent as the children of white citizens are entitled by the laws of this State.' "

In the more recent case of Evans v. Young, 1956, 201 Tenn. 368, 299 S. W. (2d) 218, our Supreme Court again had occasion to decide a slave case and to construe T.C.A. Section 31-303 relating to collateral inheritance among citizens of color. In that case our Tennessee Supreme Court held that the collateral heirs of a negro whose parents were slaves at the time of his birth in Mississippi were entitled to inherit his property located in Tennessee in preference to the devisees of his wife. The State of Mississippi by its Public Acts of 1865 and by a provision

of its constitution of date 1869 provided for the legitimation of all of the children of slave marriages. The provision is copied verbatim in Evans v. Young and is very similar to our T.C.A. Section 31-302.

Justice Burnett, in his opinion in Evans v. Young, 201 Tenn. at page 378, 299 S. W. (2d) at page 222, makes the clear statement that the present public policy of Tennessee is, where possible, to try to make a person legitimate rather than illegitimate citing Smith v. Mitchell, 185 Tenn. 57, 202 S. W. (2d) 979.

In the case of Phoenix Insurance Co. v. Jordan, 1944, 28 Tenn. App. 11, 184 S. W. (2d) 721, Judge Hickerson made the flat statement: "Persons born of parents while in a state of slavery are illegitimate. There was no capacity to contract, so there could be no lawful marriage in such cases. It follows that there was no lawful issue. Cole v. Taylor, 132 Tenn. 92, 177 S. W. 61; Napier v. Church, 132 Tenn. 111, 177 S. W. 56."

Judge Hickerson makes no mention of the earlier cases of Andrews v. Page, 50 Tenn. 653, nor Brown v. Cheatham, 91 Tenn. 97, 17 S. W. 1033, and makes no reference to T.C.A. Section 31-302 and 31-303. Justice Burnett in Evans v. Young, supra, made no mention or reference to the language of Judge Hickerson in Phoenix Insurance Co. v. Jordan et al.

At first blush it would appear that there is a conflict between the language of Judge Hickerson in Phoenix Insurance Co. v. Jordan and the opinion by Justice Burnett in Evans v. Young. If so, of course, the holding of our Tennessee Supreme Court subsequent to the decision by the Court of Appeals would certainly prevail.

However, a reading of Phoenix Insurance Co. v. Jordan shows that the statement made by Judge Hickerson was not necessary to a decision of the case and was much broader than the facts of the case justified. The only evidence of the record relating to the legitimacy or illegitimacy of one R. D. Black was the death certificate which showed that he was born October 4, 1863, in the State of Tennessee, that Moses Jackson was his father and that Charity Coleman was his mother. Thus the death certificate itself, the only evidence before the lower court, tended to show R. D. Black as being illegitimate.

The ultimate issue in Phoenix Insurance Co. v. Jordan was whether or not the complainants were the sole and unconditional owners of the insured property within the meaning of a fire insurance policy. R. D. Black was a former owner of the property. The complainants and those through whom they claim had been in full possession of the property from 1914 to 1944 claiming to own the same in fee simple as devisees of the widow of R. D. Black and the court found as a fact that they were the sole owners within the meaning of the policy because no other person was making any claim to the property. Thus we are of opinion that the language of Judge Hickerson in Phoenix Insurance Co. v. Jordan was inapt and not a complete statement of the law.

■ Now we turn to the facts of the instant case bearing upon the legitimacy or illegitimacy of Sam Anderson. We must bear in mind that the defendants, Cooper Anderson and W. E. Leech, were in the possession of the property in litigation under registered conveyances of title. This is an action of ejectment and the appellees, the intervening petitioners, as the collateral heirs of

Eliza Anderson can rely only on the strength of their own title and not on the weaknesses of the defendants' title. Demarcus v. Campbell, 17 Tenn. App. 56, 65 S. W. (2d) 876; Bertha v. Smith, 26 Tenn. App. 619, 175 S. W. (2d) 41.

In order for the intervening petitioners to show perfect title the burden of proof is on them to prove: (1) that Sam Anderson was illegitimate and therefore his collateral heirs did not take his real estate in preference to his widow and (2) that the children of Sam Anderson were illegitimate and therefore their descendants did not take Sam Anderson's property in preference to his widow.

There is no direct proof in the record that Sam Anderson was either legitimate or illegitimate. The record does show that Sam Anderson was one of eight children born to Jim Anderson and Annie Anderson. The names of the other seven brothers and sisters of Sam Anderson are as follows: Lucian Anderson, Pat Anderson, Jim. Anderson, Gale Anderson, Hamp Anderson, Sarah Anderson and Veeney Anderson.

■ Sam Anderson was born about 1841 about five miles north of Jackson, Tennessee. Nearly all of his brothers and sisters also lived in and around Jackson, Tennessee. The presumption of legitimacy, while rebuttable, is one of the strongest presumptions known to the law. The following quotations from 7 Am. Jur.— Bastards—page 634, Section 13, are appropriate:

"It is a primary principle that every reasonable presumption will be made in favor of legitimacy, and the burden of proof is on the person alleging illegiti-

macy * * *. The presumption of legitimacy is not limited to those cases where marriage is claimed or proved and the non-access of the husband or the validity of the marriage is at issue. It has a wider application and applies to every case where the question is at issue.

"It has been said that the law presumes that every child in a Christian country is prima facie the offspring of a lawful, rather than a meretricious, union of parents, and this is true in one sense. Filiation being established, legitimacy is presumed * * *. Especially will this presumption of legitimacy be indulged after the death of children whose legitimacy is in question and after the lapse of time. In such a case very slight circumstances are sufficient to authorize a court or jury to find the existence of a marriage which makes them legitimate * * *."

█ There is no proof in the record that Jim Anderson and Annie Anderson did not live together as man and wife before 1865 in Tennessee. In view of the fact that slave marriages were practiced and encouraged during slavery times and in view of the fact that not less than eight children were born to Jim and Annie Anderson, we feel constrained to hold that, absent any proof to the contrary, Sam Anderson was the child of a slave marriage of Jim and Annie Anderson. Therefore, he was legitimated by Chapter 40 of the Public Acts of 1865, T.C.A. Section 31-302. Likewise, his brothers and sisters were also legitimated.

█ When Sam Anderson died in 1924 intestate the title to his property devolved under our statutes of descent and distribution either upon his grandchildren,

if his children were legitimate, or if the children were illegitimate, the title devolved upon his collateral heirs, namely his brothers and sisters or their descendants under T.C.A. Section 32-303 enacted in 1919. His widow did not inherit his land. Thus we hold that the assignments of error of Cooper Anderson and W. E. Leech must be sustained and the decree of the Chancellor holding Sam Anderson illegitimate and decreeing title in the property in the collateral heirs of Eliza Anderson is erroneous.

By appropriate assignments of error Cooper Anderson and W. E. Leech also insist that His Honor the Chancellor was in error in decreeing that the children of Sam Anderson, namely Robert, Harriet and Sarah were also illegitimate and that the deeds of Sam Anderson's grandchildren to Cooper Anderson conveyed no title. There is considerable proof in the record that it was a matter of general knowledge among Sam Anderson's close friends and relatives that he and Saludie Lee were never married; that he referred to these three children as outside children. However, there is also proof on the part of one of his sons-in-law and possibly other relatives that they had never heard the children called outside children or that Sam Anderson and Saludie Lee were never married.

The defendant, Cooper Anderson, who owned the farm adjoining the farm of Sam Anderson, testified that back about 1915 Sam Anderson told him that he had entered into a slave marriage with Saludie Lee, the mother of his three children. However, the record is entirely silent as to the exact status and whereabouts of Sam Anderson and Saludie Lee for the period from 1862 to 1872. Sam Anderson was 21 years of age in 1862.

His son, Robert Anderson, was born to him and Saludie Lee in 1863. The daughter Harriet Anderson was born to Sam Anderson and Saludie Lee in 1866. The daughter Sarah Anderson was born to Sam Anderson and Saludie Lee in 1869. In 1872 Saludie Lee entered into a civil marriage with Alfred Ridley. Sometime shortly thereafter she took the three children to Arkansas with her and Sam Anderson went to Arkansas and got the children and brought them back to his home in Tennessee.

It should always be the effort of the court to have all of the witnesses speak the truth if at all possible. It is entirely reasonable to assume that Sam Anderson never heard of the enactment of Chapter 40 of the Public Acts of 1865 legalizing slave marriages. Therefore he could well have thought that he was never legally married to Saludie even though he had lived with her for a period of years and had three children by her. This lack of knowledge of the enactment of Chapter 40 of the Public Acts of 1865 might well have been the reason he called them outside children, if he did, and the reason that it became generally thought among their friends and associates that he was never married to Saludie Lee.

If we assume that Sam Anderson never heard of the law legalizing slave marriages then there is no conflict between the testimony of Cooper Anderson and the testimony of the appellees' witnesses when Cooper Anderson testified that Sam Anderson told him back in 1915 that he had entered into a slave marriage with Saludie Lee.

Further we observe that Saludie Lee is not charged with any immoral conduct with any person other than Sam Anderson; that after her marriage ceremony to Alfred Ridley in 1872 and her subsequent marriage to

George Lyons about 1886 there is no suggestion that her conduct was in any way reprehensible, illegal or immoral. Also we notice that the deceased Sam Anderson is not charged with any immoral conduct with any person other than Saludie Lee. It is significant to note that upon the trial of this cause there were a number of witnesses who had known Sam Anderson closely since his marriage to Lou Howlett in 1885 and down until the time of his death in 1924. None of these witnesses accused Sam Anderson of any improper conduct of any kind during this long period of time.

We think it very significant that there is no report among the friends and relatives of Sam Anderson suggesting that either he or Saludie Lee cohabited with or were associated with any other woman or man than each other during the period from 1862 through 1869 in which the three children of Sam Anderson were conceived and born. Though the proof is not clear apparently Saludie Lee did not belong to the same master as Sam Anderson and lived on a different farm. As said in Napier v. Church, 132 Tenn. 111, 118, 177 S. W. 56, the slave marriage was a mere cohabitation with some degree of regularity to give it a sense of decency and subject to being absolutely terminated at the will of the master at any time. Certainly the cohabitation between the parties would be less regular if the slaves lived on different farms and were owned by different masters.

In order to sustain the action of the Chancellor and hold the children of Sam Anderson illegitimate we must find that his relations with Saludie Lee during the period from 1862 through 1869 were meretricious, immoral and without even the slight ceremony or ritual

required of a slave marriage. The law generally assumes the conduct of an individual to be moral rather than immoral. There is no proof in this record that the relations between Sam Anderson and Saludie Lee were immoral and not pursuant to a slave marriage except the report among friends and relatives of Sam Anderson during the later years that he was never married to the mother of these three children and that possibly he sometimes referred to them as outside children. The testimony is conflicting on this point. We must also remember that the very purpose of Chapter 40 of the Acts of 1865 was to legalize slave marriages, legitimate the children thereof and give them the right to inherit from their parents.

■■■ There were no witnesses upon the trial who knew or were associated with Sam Anderson and Saludie Lyons during the period 1862 through 1869. Robert Anderson has been dead over 70 years and his sisters, Harriet and Sarah, have been dead about 40 years. The burden was upon the intervening petitioners to overcome the presumption of the legitimacy of Robert Anderson, Harriet Anderson and Sarah Anderson. In view of the extremely long time which has elapsed between the birth of these three children and the trial of this cause we hold that the evidence of reputation among the family of Sam Anderson during his later years is insufficient to overcome the presumption of legitimacy of the three children, Robert Anderson, Harriet Anderson and Sarah Anderson. Therefore His Honor the Chancellor was in error in declaring said three children illegitimate. The assignments of error of Cooper Anderson and William Leech will be sustained.

In view of our action taken above it becomes unnecessary for us to consider the further assignments of error by Cooper Anderson that His Honor the Chancellor erroneously held that the intervening petitioner, Alma Smith Isbell, was entitled to file suit on behalf of herself and the other collateral heirs of Eliza Anderson. Likewise it becomes unnecessary for us to consider the assignment of error by the intervening petitioners, appellees herein, that His Honor the Chancellor erroneously held that Alma Smith Isbell was not entitled to prosecute the suit on behalf of herself and the other appellees as against the defendant William E. Leech.

A decree will be entered in this Court reversing the action of the Chancellor below, dismissing the intervening petition of the appellees, vesting title in the real estate in litigation in the defendants, Cooper Anderson and William E. Leech, in accordance with this opinion. The appellees are taxed with all the costs of this cause in the court below and in this court except such costs as may have been taxed in the court below against the original complainants, David Anderson, et al.

Avery, (P.J.,W.S.), and Bejach, J., concur.